SCOTT K. BEHRENDT (State Bar No. 200217)
*sbehrendt@tocounsel.com*
THEODORA ORINGHER PC
1840 Century Park East, Suite 500
Los Angeles, California 90067-2120
Telephone: (310) 557-2009
Facsimile: (310) 551-0283

Counsel for Defendant Seth Casden

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| MULTIPLE ENERGY TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> SETH CASDEN, <br><br> Defendant. | Case No. 2:21-cv-01149-ODW-RAO <br><br> **AMENDED NOTICE OF APPEAL** |

**PLEASE TAKE NOTICE** that defendant Seth Casden ("Defendant") in the above-captioned case hereby amends, pursuant to Federal Rule of Appellate Procedure, Rule 4(a)(4)(B)(ii), his notice of appeal of July 30, 2024 (ECF No. 221) to the United States Court of Appeals for the Ninth Circuit from the Court's Judgment (after trial by Court) entered on September 26, 2023 (ECF No. 199) and encompassing, pursuant to Federal Rule of Appellate Procedure 3(c)(4), all orders that, for purposes of appeal, merge into the Judgment, including but not limited to

the Post-Trial Order entered on September 21, 2023 (ECF No. 198).

The notice of appeal is hereby amended to also include the order denying Defendant's post-trial Motion for Judgment as a Matter of Law or Alternatively a New Trial, Motion to Alter Judgment, and Motion to Waive Requirement of Bond and Stay Enforcement, and granting Plaintiff's Motion for Attorney Fees, which was entered on February 21, 2025 (ECF No. 260). The appeal from the Court's Judgment has already been assigned a Court of Appeals Case No. 24-4691. The appealed Post Trial Order (ECF No. 198),  Judgment (ECF No. 199), and order denying Defendant's post-trial motions and granting Plaintiff's motion for attorney's fees (ECF No. 260) are attached hereto as exhibits 1, 2, and 3, respectively.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Federal Rule of Appellate Procedure, Rule 4(a)(4)(B)(iii), no filing fee is required for this Amended Notice of Appeal.

///

///

///

///

///

///

///

AMENDED NOTICE OF APPEAL

**PLEASE TAKE FURTHER NOTICE** of the following Representation Statement, provided pursuant to Federal Rule of Appellate Procedure, Rule 12(b) and Ninth Circuit Rule 3-2(b):

Party:          Plaintiff Multiple Energy Technologies, LLC

Attorneys:   Bethany M. Stevens
                  Hannah Lynn Cannom
                  Walker Stevens Cannom LLP
                  500 Molino Street, #118
                  Los Angeles, California 90013-1777
                  (213) 712-9145

                  Nicole Sullivan
                  Thomas Butler
                  White and Williams LLP
                  7 Times Square, Suite 2900
                  New York, New York 10036-6524
                  (212) 714-3070

Party:          Defendant Seth Casden

Attorneys:   Scott K. Behrendt
                  Theodora Oringher PC
                  1840 Century Park East, Suite 500
                  Los Angeles, CA 90067
                  310-480-5915

DATED: February 28, 2025          THEODORA ORINGHER PC

                                              /s/ Scott K. Behrendt
                                              _____
                                              Scott K. Behrendt

                                              Counsel for
                                              Defendant Seth Casden

AMENDED NOTICE OF APPEAL

# Exhibit 1

**O**

1
2
3
4
5
6
7
8
9
10

# United States District Court
# Central District of California

11  MULTIPLE ENERGY
12  TECHNOLOGIES, LLC,

                    Plaintiff,
13
14           v.

15  SETH CASDEN,
16
                    Defendant.
17

Case № 2:21-cv-01149-ODW (RAOx)

**POST-TRIAL ORDER**

## I.     INTRODUCTION

Plaintiff Multiple Energy Technologies, LLC ("MET") brought this action against Defendant Seth Casden for false advertising under the Lanham Act and California Business & Professions Code section 17500, unfair competition under California Business & Professions Code section 17200, and tortious interference with contractual relations.  (First Am. Compl. ("FAC"), ECF No. 24.)  After the close of evidence following a four-day jury trial, the Court granted in part MET's Federal Rule of Civil Procedure ("Rule") 50(a) motion, with respect to its claim for tortious interference with contractual relations.  (*See* Mins. Trial, ECF Nos. 177–80.)  The jury subsequently returned a verdict in MET's favor on its false advertising claim and awarded MET $1 in nominal damages.  (Verdict 1–2, ECF No. 190.)  The jury also

EXHIBIT 1

returned an advisory verdict in MET's favor on Casden's agency immunity defense to MET's tortious interference with contractual relations claim.  (*Id.* at 3–4.)

Several issues remain for the Court's resolution.  (*See* Joint Resp. Re: Issues Remaining for Court's Resolution ("Joint Resp."), ECF No. 194.)   The Court addresses the issues the parties raise below.

## II.    BACKGROUND[1]

MET developed a patented bioceramic infrared material branded as "Redwave." Casden is the co-founder and CEO of Hologenix, which manufactures, markets, and licenses a patented bioceramic material branded as "Celliant."

Prior to this case, in February 2019, MET sued Hologenix for allegedly engaging in false advertising of Celliant.  *See Multiple Energy Technologies, LLC v. Hologenix, LLC*, No. 2:19-cv-01483-PA (RAOx) (C.D. Cal.) ("*MET v. Hologenix*"). On March 6, 2020, MET and Hologenix entered into a Settlement Agreement and General Release ("Settlement Agreement"), which settled MET's claims in *MET v. Hologenix*.  (Ex. 5.[2])  Casden negotiated and signed the Settlement Agreement on behalf of Hologenix.

In the Settlement Agreement, Hologenix agreed to pay MET a total of $2,500,000 according to a schedule whereby Hologenix would pay $100,000 within one business day of executing the Settlement Agreement, $1,400,000 on or before April 23, 2020, and the remaining $1,000,000 in 2021.  (*Id.* at 1-2.)  As part of the Settlement Agreement, Hologenix and MET also agreed to request that the Court enter a permanent injunction enjoining Hologenix from "stat[ing] or suggest[ing]" that the Food and Drug Administration ("FDA") "approved" Celliant or "made a 'determination'" that Celliant promoted any benefits.  (*Id.* at 3.)  On March 10, 2020, the court in *MET v. Hologenix* entered the requested permanent injunction.  (Ex. 27.)

---

[1] The background facts provided here are either stipulated or uncontested.

[2] The Court's exhibit citations refer to the parties' admitted trial exhibits.

EXHIBIT 1

2

Following entry of the permanent injunction, Casden made or approved statements about Celliant that violated the permanent injunction. Additionally, on April 22, 2020—the day before Hologenix was scheduled to pay $1,400,000 to MET pursuant to the Settlement Agreement—Hologenix filed for bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. As a result of the bankruptcy proceedings, MET returned the only payment that it had received from Hologenix under the Settlement Agreement—the initial $100,000 payment.

On February 8, 2021, MET filed this civil suit against Casden. (Compl., ECF No. 1.) In the operative First Amended Complaint, MET asserts four causes of action: (1) violation of the Lanham Act, 15 U.S.C. § 1125(A)(1)(B); (2) false advertising under California Business & Professions Code section 17500; (3) unfair competition under California Business & Professions Code section 17200; and (4) tortious interference with contractual relations. (FAC ¶¶ 76–108.)

On June 20 to 23, 2023, MET tried its claims before a jury. (*See* Mins. Trial.) After the close of evidence, the Court granted in part MET's Rule 50(a) motion, with respect to its claim for tortious interference with contractual relations. (June 22, 2023 Trial Tr. ("June 22 Tr.").[3]) In doing so, the Court found that Casden acted to advance his personal interests when he tortiously interfered with the Settlement Agreement, thus foreclosing any agency immunity defense. Nonetheless, at Casden's request, the Court submitted to the jury for advisory findings two questions related to Casden's agency immunity defense. (*Id.*; Verdict 4.) Consistent with the Court's finding, the jury issued an advisory finding that Casden acted to advance his own personal interests. (Verdict 4.) Relatedly, the jury found that MET's damages for the tortious interference claim were $1 in nominal damages. (*Id.*) The jury also returned a verdict

---

[3] The Court carefully reviewed the rough trial transcripts, which comport with the Court's notes and recollection of trial. Because only the rough trial transcripts are available at this time, throughout this Order, the Court refers to testimony and argument from the trial according to the day on which they occurred and omits any pin cites to the transcripts.

EXHIBIT 1

3

in MET's favor on its false advertising claim and awarded MET $1 in nominal damages. (*Id.* at 1–2.)

### III.    DISCUSSION

The Court (1) reviews the factual and legal basis for its order granting in part MET's Rule 50(a) motion, as to the claim for tortious interference, and addresses MET's resulting damages; (2) finds that MET is entitled to disgorgement of Casden's profits, treble damages, and attorneys' fees under the Lanham Act; and (3) finds Casden is liable for violations of California's false advertising and unfair competition laws and issues a permanent injunction.

### A.    Tortious Interference Claim

After the close of evidence at trial, the Court granted in part MET's Rule 50(a) motion, with respect to its claim for tortious interference with contractual relations. The Court indicated then that it would issue a written order addressing the factual basis for its order and the applicability of Casden's asserted agency immunity defense.

Rule 50(a) permits a party to move for judgment as a matter of law prior to the submission of the case to the jury. Fed. R. Civ. P. 50(a). Under Rule 50(a), "a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000); *see also Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000) ("[Rule 50(a)] allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.'" (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2521, p. 240 (2d ed.1995))). "In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150.

EXHIBIT 1
4

*1. Elements of Tortious Interference*

Applying this standard to MET's Rule 50(a) motion, the Court concluded that MET was entitled to judgment as a matter of law on its intentional interference with contractual relations claim. Under California law, a claim for intentional interference with contractual relations requires: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (en banc). "The third element incorporates a causation requirement that the intentional acts be a substantial factor in causing the breach." *Mossimo Holdings, LLC v. Haralambus*, No. 2:14-cv-05912-DDP (JEx), 2017 WL 1240739, at *5 (C.D. Cal. Apr. 4, 2017) (citing *Bank of New York v. Fremont Gen. Corp.*, 523 F.3d 902, 909 (9th Cir. 2008)), *aff'd on other grounds*, 735 F. App'x 383 (9th Cir. 2018).

To begin with, MET presented undisputed evidence satisfying the first and second elements of intentional interference with a contract. First, it is undisputed that MET and Hologenix entered into a valid contract—the Settlement Agreement. (Ex. 5.) And second, it is undisputed that Casden, who negotiated and signed the Settlement Agreement on behalf of Hologenix, (*Id.* at 6; June 21, 2023 Trial Tr. ("June 21 Tr.")), knew of the contract and its terms, including the permanent injunction that the court entered pursuant to parties' request in the Settlement Agreement, (Exs. 5 at 3, 27). The permanent injunction enjoined Hologenix, "whether acting directly or through any affiliate, subsidiary, agent, heir, or representative," from "stat[ing] or suggest[ing]" that the FDA "approved" Celliant or "made a 'determination'" that Celliant promoted any benefits. (Ex. 27 at 2.)

Turning to the third element of intentional interference, the evidence at trial was overwhelming that Casden intended to induce a breach or disruption of the Settlement Agreement. MET's evidence demonstrated that Casden made and approved

EXHIBIT 1
5

statements that caused Hologenix to violate the permanent injunction. For example, on March 11, 2020, the very next day after the court entered the parties' requested permanent injunction, Casden authored an article in which he stated, "Celliant has been determined by the [FDA] to be a medical device and general wellness product." (Ex. 24 at 2.) In another example, in an interview dated March 31, 2021, Casden explained that Hologenix previously claimed it was FDA approved because "we got a determination . . . [w]e're determined as a medical device," but "it's just easier to say 'approval.'" (Ex. 72 at 6.) These statements clearly violated the permanent injunction's prohibition on statements or suggestions that the FDA "made a 'determination' as to whether Celliant provides any benefits." (Ex. 27 at 2.) Taken together, the evidence at trial demonstrated that Casden understood which statements about Celliant were prohibited by the permanent injunction, but he made them anyways, intentionally causing Hologenix to breach the Settlement Agreement.

Additionally, the evidence showed that Casden, as a Hologenix board member, voted in favor of Hologenix's filing for bankruptcy. (June 21 Tr.) As a result, Hologenix filed for bankruptcy about one month after entering into the Settlement Agreement and the day before Hologenix was due to pay MET $1,400,000 under the Settlement Agreement. (Exs. 5, 122.) Because of the bankruptcy proceedings, MET was required to return the only payment that it received from Hologenix of $100,000, and Hologenix has in effect avoided making any payments to MET under the Settlement Agreement. (June 21 Tr.) This evidence, including the timing of Casden's actions, made clear that Casden's actions were designed to induce a breach or disruption of the Settlement Agreement.

Finally, MET presented evidence satisfying the fourth and fifth elements of intentional interference. Hologenix breached the Settlement Agreement in making statements that violated the terms of the permanent injunction and in failing to pay MET pursuant to the Settlement Agreement. Casden's conduct—both in making and approving statements that violated the permanent injunction and in pursuing

EXHIBIT 1

6

Hologenix's bankruptcy, thereby avoiding making any payments under the Settlement Agreement[4]—was a substantial factor in causing Hologenix's breach, which ultimately damaged MET by depriving MET of the value of the Settlement Agreement.

Viewing the evidence in the light most favorable to Casden, the Court concluded that no reasonable jury could find for Casden on MET's tortious interference claim.

### 2. Agency Immunity Defense

After the Court issued its tentative ruling, the Court provided the parties with an opportunity to further argue their Rule 50(a) motions. For the first time, Casden conceded that MET had met all of the elements for its tortious interference claim, but maintained that Casden cannot be held liable due to the agency immunity defense. (June 22 Tr.)

In its original form, the agent's immunity rule provides that "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Wise v. S. Pac. Co.*, 223 Cal. App. 2d 50, 72 (1963). "This rule derives from the principle that ordinarily corporate agents and employees acting for and on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract since being in a confidential relationship to the corporation their action in this respect is privileged." *Id.* From this, courts have held that only a "stranger" to a contract may intentionally interfere with it, and a stranger is "a defendant who is not a party to the contract or an agent of a party to the contract." *See, e.g.*, *Caliber Paving Co., Inc. v. Rexford Indus. Realty & Mgmt., Inc.*, 54 Cal. App. 5th 175, 180, 187 (2020). However, this rule "is in a state

---

[4] Casden's actions provide at least two independent bases for tortious interference with the Settlement Agreement: first, Casden's actions with regards to making and approving statements that violated the permanent injunction and, second, Casden's actions with regards to pursuing Hologenix's filing for bankruptcy.

EXHIBIT 1

7

of flux," *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1127 (9th Cir. 2014), and the Ninth Circuit has recognized its potential for "perverse" results: "[S]hield[ing] parties with an economic interest in the contract from potential liability . . . create[s] an undesirable lacuna in the law between the respective domains of tort and contract," *United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1007 (9th Cir. 2014).

This case demonstrates the reality of that concern. Cognizant of this, the Court found that the agency immunity defense did not apply here because, in interfering with the Settlement Agreement, Casden acted in his personal interest, undercutting any immunity conferred by agency. (June 22 Tr.) Casden argued that such an order "den[ies] him the ability to vote in favor of bankruptcy [because] there's no set of circumstances under which [he] would be justified in voting for bankruptcy without resulting in liability." (*Id.*) The Court disagrees. To begin with, Casden's argument incorrectly assumes that Casden's tortious conduct is limited to his support for Hologenix's bankruptcy. As addressed above, Casden also made or approved false statements that caused Hologenix to violate the permanent injunction. (*See supra* 5–7.)

Moreover, the Court's finding that the agency immunity defense is inapplicable is tied to the exceptional facts of this case. The evidence at trial was overwhelming that Casden not only interfered with the Settlement Agreement, but he simultaneously ensured that his interference served his personal interests. For example, Casden was eligible for a bonus of up to fifty percent of his base salary per year based on Hologenix's business performance. (June 21 Tr.) Thus, by falsely promoting Celliant, Casden positioned himself to gain personally. In addition, shortly after MET sued Hologenix in the previous case, Casden entered into an employment contract with Hologenix, thereby ensuring his position as a secured creditor in Hologenix's subsequent bankruptcy. (*Id.*) As such, Casden simultaneously negotiated the Settlement Agreement with MET and prepared Hologenix for bankruptcy with the

EXHIBIT 1

8

knowledge that Hologenix filing for bankruptcy would cause Hologenix to breach the Settlement Agreement, all while protecting his personal interests in his employment and salary.  For these reasons, and pursuant to the Rule 50(a) standard, the Court found that Casden acted for his individual advantage.  The jury agreed, rendering an advisory finding that Casden acted to advance his own personal interests at the time he interfered with the Settlement Agreement. (Verdict 4.)  Under the exceptional facts of this case, the Court finds that Casden tortiously interfered with the Settlement Agreement for his own personal benefit such that the agency immunity defense does not apply.

### 3.    *Damages*

MET now asks the Court to determine the amount of damages to award MET for its tortious interference claim, arguing that the jury's damages award for $1 in nominal damages was advisory.  (Joint Resp. 1–2.)  Casden responds that the jury made a final determination as to damages. (*Id.*)

Here, on its Rule 50(a) motion, MET argued that it was entitled to judgment as a matter of law as to the entirety of its tortious interference claim.  (June 22 Tr.)  On the element of harm, MET argued that Casden's tortious conduct deprived MET of the $2,500,000 to which it was entitled under the Settlement Agreement.  (*Id.*)  Moreover, Casden conceded that, with the exception of the agency defense, MET satisfied all of the elements for tortious interference, including the element of harm.  (*Id.*)  Based on this record, the Court granted MET's motion for judgment as a matter of law on MET's tortious interference claim.  (*Id.*)

Nonetheless, upon Casden's request, the Court permitted the jury to issue an advisory finding on the issue of the agency immunity defense.  (*Id.*)  Thus, in preparing the verdict form for the jury, in addition to leaving the two questions relating to the agency immunity defense blank, the Court also left blank the amount of damages for MET's tortious interference claim.  (Verdict 4 (Questions 15 through 17).)  The verdict form instructed the jury to address damages only if the jury found

EXHIBIT 1

9

Casden acted to advance his own personal interests at the time he interfered with the contract. (*Id.*) Accordingly, it was necessary to leave the amount of damages blank on the verdict form to avoid signaling to the jury that the Court had already found that Casden acted to advance his own personal interests and was liable. The Court's decision to permit the jury to issue an advisory finding on the agency immunity defense does not deprive the Court of its ability to issue a damages award on this cause of action for which it found MET was entitled to judgment as a matter of law.

MET also asks the Court to award punitive damages. (Joint Resp. 2.) However, MET did not argue for punitive damages in making its Rule 50(a) motion. Moreover, the parties did not provide the Court with any proposed jury instructions on punitive damages, (*see* Proposed Jury Instrs., ECF Nos. 119, 120, 126), or include a question touching on punitive damages on the verdict form, (*see* Verdict). Accordingly, MET waived any claim for punitive damages.

Consistent with the record and pursuant to the Court's order granting in part MET's Rule 50(a) as to the tortious interference claim, the Court awards MET $2,500,000 in damages.

## B. Relief Pursuant to the Lanham Act

The jury returned a verdict in MET's favor on its false advertising claim under the Lanham Act and awarded MET $1 in nominal damages. (Verdict 1–2.) In relation to its Lanham Act claim, MET now asks the Court to determine (1) whether the financial benefit Casden and Hologenix derived from the false advertising should be disgorged, and if so, the amount of that financial benefit; (2) whether an award of treble damages is warranted; and (3) whether an award of attorneys' fees is warranted. (Joint Resp. 1–3.) The Court addresses each of these questions in turn.

### 1. Disgorgement

Under 15 U.S.C. § 1117(a), "the plaintiff shall be entitled . . . subject to the principles of equity, to recover . . . defendant's profits." 15 U.S.C. § 1117(a). In assessing profits, it is the "[plaintiff's] burden to show with reasonable certainty [the

EXHIBIT 1
10

defendant's] gross sales from [the infringing activity]." *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999). "Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). "The defendant thereafter bears the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead." *Id.*

The Court finds MET is entitled to Casden's profits. MET argues that a court may disgorge from a defendant who committed false advertising the financial benefit that flows from the false advertising, including any financial benefit that flows to a third-party company. (June 22 Tr.) However, contrary to that position, the plain language of the Lanham Act limits a plaintiff's recovery to "defendant's profits." 15 U.S.C. § 1117(a). Hologenix is not a defendant here and, as a practical matter, the Court is unable to disgorge profits from a third-party entity presently in bankruptcy. Accordingly, the Court limits disgorgement to Casden's profits.

MET presented evidence at trial that, since 2019, Casden has received an annual salary of $300,000 as CEO of Hologenix, whose only product is Celliant. (June 21 Tr.) Accordingly, applying the principles of equity, the Court considers Casden's salary as his profits from engaging in false advertising of Celliant. The Court finds it is appropriate to disgorge Casden's salary from March 11, 2020, the day after the court entered the injunction, through June 20, 2023, the start of trial, as Casden's profits derived from Casden's false advertising of Celliant. The Court calculates Casden's salary for that period of time to be $983,171.

### 2. Attorneys' Fees and Treble Damages

Under the Lanham Act, "[t]he Court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any

EXHIBIT 1
11

significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Exceptional cases" include those in which a defendant's conduct is "fraudulent, deliberate, or willful." *Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1039 (9th Cir. 2007). In awarding attorneys' fees, the court exercises equitable discretion to determine whether a case is exceptional based on the "totality of the circumstances" using a preponderance of the evidence standard. *SunEarth*, 839 F.3d at 1181.

In addition to awarding attorneys' fees, "[i]n assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a); *see also A & M Recs., Inc. v. Abdallah*, 948 F. Supp. 1449, 1458 (C.D. Cal. 1996), *as amended* (Nov. 21, 1996) ("[T]he Court has the discretion to award up to treble damages for a Lanham Act violation.").

Here, the Court finds the deliberate and willful nature of Casden's conduct entitles MET to its attorneys' fees and treble damages. To begin with, although the jury awarded MET with only nominal damages, MET is nonetheless a "prevailing party" for attorneys' fees purposes because MET proved at trial that Casden violated the Lanham Act. (Verdict 1–2.) In addition, the jury found that Casden's false statements were "deliberately or intentionally false." (Verdict 1.) At trial, there was substantial evidence of the willful and deliberate nature of Casden's false advertising. In particular, because of litigation that preceded the instant matter, Hologenix and its employees were enjoined by a permanent injunction from making the very false statements at issue in this litigation. (Ex. 27.) Casden negotiated the Settlement Agreement by which the parties requested entry of the permanent injunction and, thus, he was well aware of its specific terms. (June 21 Tr.) Even so, immediately after entry of the permanent injunction, Casden continued to make false statements that not only constituted false advertising, but also violated the terms of the permanent injunction. MET also presented evidence that Casden provided guidance to

EXHIBIT 1
12

Hologenix's brand partners regarding the statements they were and were not allowed to make about Celliant; yet, contrary to that guidance, Casden himself made false advertising statements about Celliant.  (*See* Ex. 13; June 21 Tr.)  In light of the jury's verdict and the evidence presented at trial, the Court finds Casden's conduct was deliberate and willful, rendering this an exceptional case for which MET is entitled to attorneys' fees and treble damages.  Any motion for attorneys' fees shall be filed in accordance with Rule 54(d).

## C.    State Law Claims for Unfair Competition and False Advertising

At trial, MET submitted that the Court, not the jury, would resolve MET's state law claims for unfair competition and false advertising under California Business & Professions Code sections 17200 and 17500, respectively.  MET now requests a determination as to Casden's liability on these claims and any relief.  (Joint Resp. 1.)

California's unfair competition law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  In addition, California's false advertising law prohibits any "untrue or misleading" statements in connection with advertising.  Cal. Bus. & Prof. Code § 17500.  "Any violation of the false advertising law . . . necessarily violates the unfair competition law."  *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 210 (1983) (en banc).  Moreover, these claims are "substantially congruent" to claims made under the Lanham Act.  *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."); *see also Biolase, Inc. v. Fotona Proizvodnja Optoelektronskih Naprav D. D.*, No. 8:14-cv-00248-AG (ANx), 2014 WL 12577153, at *2 (C.D. Cal. Sept. 15, 2014) (same as to false advertising claims under California Business and Professions Code section 17500).

EXHIBIT 1
13

Here, consistent with the evidence at trial, the jury found Casden liable for false advertising under the Lanham Act.  (Verdict 1–2.)  The Court also finds that MET suffered injury in fact as a result of Casden's false advertising conduct.  *See Hall v. Time Inc.*, 158 Cal. App. 4th 847, 854, *as modified* (Jan. 28, 2008) ("[A] plaintiff suffers an injury in fact for purposes of standing under the UCL when he or she has: (1) expended money due to the defendant's acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim." (internal citations omitted)).  Among other things, MET introduced evidence that, as a result of Casden's false advertising of Celliant, MET performed additional studies to demonstrate the viability of its product and spent more time trying to close contracts. (June 21 Tr.); *see S. Cal. Hous. Rts. Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1069 (C.D. Cal. 2005) (finding injury in fact based on loss of financial resources and diversion of staff time).  Accordingly, because MET's state law claims for false advertising and unfair competition are substantially congruent to and rest upon the same factual basis as MET's claim for false advertising under the Lanham Act, the Court finds Casden liable for false advertising and unfair competition under California Business & Professions Code sections 17500 and 17200, respectively.

As such, MET is entitled to an appropriate remedy.  Under California Business & Professions Code section 17203, "the primary form of relief . . . is an injunction, along with ancillary relief in the form of such restitution 'as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.'"  *In re Tobacco II Cases*, 46 Cal. 4th 298, 319 (2009) (quoting Cal. Bus. & Prof. Code § 17203).  "A court's discretion in fashioning a remedy under Section 17203 'is very broad.'"  *Kivett v. Flagstar Bank, FSB*, 506 F. Supp. 3d 749, 762 (N.D. Cal. 2020) (quoting *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 180 (2000), *aff'd*, No. 21-15667, 2022 WL 1553266 (9th Cir. May 17, 2022).

EXHIBIT 1

14

### 1.    Injunctive Relief

Here, as part of the Settlement Agreement resolving substantially similar false advertising claims, MET and Hologenix, via Casden, requested that the court enter a permanent injunction enjoining Hologenix and its agents from making certain false advertising statements.  (*See* Exs. 5, 27.)  The Court finds that it is an appropriate remedy to enter a substantially similar permanent injunction here.  The Court enters an injunction as set forth in the Conclusion below.  (*See infra* Part IV.)

### 2.    Restitution

However, the Court finds that MET has not demonstrated that it is entitled to restitution.  Restitution under the UCL is only available when a sum can "clearly be traced to particular funds or property in the defendant's possession."  *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 699 (2006) (explaining restitution must be "based on a specific amount found owing").  The plaintiff must have a "vested interest" in the money or property at issue.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003).  Here, MET has not demonstrated that it is entitled to specific funds or property in Casden's possession.

## IV.    CONCLUSION

For the reasons discussed above, the Court **ORDERS** as follows:

The Court **GRANTS IN PART** MET's Rule 50(a) motion as to its claim for tortious interference and **AWARDS** MET **$2,500,000** in damages for this claim.  The Court **DENIES** MET's request for punitive damages.

In light of the evidence at trial and the jury's verdict in MET's favor on its false advertising claim under the Lanham Act, the Court finds MET is entitled to (1) Casden's profits; (2) treble damages; and (2) attorneys' fees.  As such, the Court **AWARDS** MET **$2,949,513** (three times Casden's profits).  Any motion for attorneys' fees shall be filed in accordance with Rule 54(d).

///

///

EXHIBIT 1

15

The Court **FINDS** Casden is liable for false advertising and unfair competition under California Business & Professions Code sections 17500 and 17200, respectively, and **ISSUES** a permanent injunction as follows:

IT IS HEREBY ORDERED that Defendant Seth Casden is enjoined from making any statement in any forum or communication including but not limited to statements 1) on any website; 2) on an social media platform; or 3) to any member of the press or persons attempting to influence the opinions or decisions of others, that a) states or suggests that the Food and Drug Administration ("FDA") has "approved" Hologenix's product Celliant for any use or any reason; b) states or suggests that the FDA has made a "determination" as to whether Celliant provides any benefits, whether those benefits are categorized as medical benefits or "general wellness" benefits; or c) states or suggests that Celliant products are better than products containing Plaintiff Multiple Energy Technologies, LLC's bioceramics because of any approval given by or determination made by the FDA.

If Celliant is cleared, authorized or approved by the FDA as reflected in the appropriate FDA databases, true and accurate statements to this effect would not be violations of this injunction.

The following statement authorized by the FDA in its June 8, 2017 letter when restated in its entirety is not a violation of this injunction: "The FDA has determined that Celliant products are medical devices as defined in section 201(h) of the Federal Food, Drug and Cosmetic Act and are general wellness products."

///
///
///
///
///
///
///

EXHIBIT 1
16

The Court will enter Judgment in accordance with the Jury's Verdict and this Order.

**IT IS SO ORDERED.**

September 21, 2023

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

EXHIBIT 1
17

Exhibit 2

O
JS-6

# United States District Court
# Central District of California

MULTIPLE ENERGY
TECHNOLOGIES, LLC,

                Plaintiff,

      v.

SETH CASDEN,

                Defendant.

Case № 2:21-cv-01149-ODW (RAOx)

**FINAL JUDGMENT**

EXHIBIT 2

Pursuant to the jury's verdict, (ECF No. 190), and the Court's Post-Trial Order, (ECF No. 198), it is therefore **ORDERED, ADJUDGED, and DECREED** as follows:

1. Plaintiff shall have **JUDGMENT** in its favor on all claims asserted in the First Amended Complaint, (ECF No. 24);

2. The Court **AWARDS** Plaintiff $2,500,000 in damages on its tortious interference claim against Defendant;

3. The Court **AWARDS** Plaintiff $2,949,513 in damages and finds Plaintiff is entitled to reasonable attorneys' fees on its Lanham Act claim against Defendant; and

4. The Court **PERMANENTLY ENJOINS** Defendant as follows:

IT IS HEREBY ORDERED that Defendant Seth Casden is enjoined from making any statement in any forum or communication including but not limited to statements 1) on any website; 2) on an social media platform; or 3) to any member of the press or persons attempting to influence the opinions or decisions of others, that a) states or suggests that the Food and Drug Administration ("FDA") has "approved" Hologenix's product Celliant for any use or any reason; b) states or suggests that the FDA has made a "determination" as to whether Celliant provides any benefits, whether those benefits are categorized as medical benefits or "general wellness" benefits; or c) states or suggests that Celliant products are better than products containing Plaintiff Multiple Energy Technologies, LLC's bioceramics because of any approval given by or determination made by the FDA.

EXHIBIT 2

2

If Celliant is cleared, authorized or approved by the FDA as reflected in the appropriate FDA databases, true and accurate statements to this effect would not be violations of this injunction.

The following statement authorized by the FDA in its June 8, 2017 letter when restated in its entirety is not a violation of this injunction: "The FDA has determined that Celliant products are medical devices as defined in section 201(h) of the Federal Food, Drug and Cosmetic Act and are general wellness products."

The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

September 26, 2023

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

EXHIBIT 2

3

# Exhibit 3

O

# United States District Court
# Central District of California

MULTIPLE ENERGY
TECHNOLOGIES, LLC,

               Plaintiff,

    v.

SETH CASDEN,

               Defendant.

Case № 2:21-cv-01149-ODW (RAOx)

**ORDER RE POST-TRIAL MOTIONS
[218][219][220][228]**

## I.     INTRODUCTION

Plaintiff Multiple Energy Technologies, LLC ("MET") brought this action against Defendant Seth Casden for false advertising and tortious interference with contractual relations. After a jury trial, the Court granted in part MET's Federal Rule of Civil Procedure ("Rule") 50(a) motion on one claim, the jury returned a verdict in favor of MET on the second, and the Court issued a Post-Trial Order ("PTO") addressing the remaining claims and issues. (Verdict, ECF No. 190; PTO, ECF No. 198.) Casden and MET now renew post-trial motions. (ECF Nos. 218, 219, 220, 228.) The Court deemed the motions appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. As the motions overlap, the Court addresses them in a single omnibus order. For the reasons below, the Court rules as follows.

EXHIBIT 3

## II.   BACKGROUND[1]

MET developed a patented bioceramic infrared material branded as "Redwave." Casden is the co-founder and CEO of Hologenix, which manufactures, markets, and licenses a patented bioceramic material branded as "Celliant."

Prior to this case, in February 2019, MET sued Hologenix for allegedly engaging in false advertising of Celliant.  *See Multiple Energy Technologies, LLC v. Hologenix, LLC*, No. 2:19-cv-01483-PA (RAOx) (C.D. Cal. filed February 28, 2019) ("*MET v. Hologenix*").   On March 6, 2020, MET and Hologenix entered into a Settlement Agreement and General Release ("Settlement Agreement"), which settled MET's claims in *MET v. Hologenix*.  Casden negotiated and signed the Settlement Agreement on behalf of Hologenix.

In the Settlement Agreement, Hologenix agreed to pay MET a total of $2,500,000 according to a schedule whereby Hologenix would pay $100,000 within one business day of executing the Settlement Agreement, $1,400,000 on or before April 23, 2020, and the remaining $1,000,000 in 2021.  As part of the Settlement Agreement, Hologenix and MET also agreed to stipulate to a permanent injunction enjoining Hologenix from "stat[ing] or suggest[ing]" that the Food and Drug Administration ("FDA") "approved" Celliant or "made a 'determination'" that Celliant promoted any benefits.  On March 10, 2020, the court in *MET v. Hologenix* entered the requested permanent injunction.

Following entry of the permanent injunction, Casden made or approved statements about Celliant that violated the stipulated permanent injunction. Additionally, on April 22, 2020—the day before Hologenix was scheduled to pay $1,400,000 to MET pursuant to the Settlement Agreement—Hologenix filed for Chapter 11 bankruptcy.  As a result of the bankruptcy proceedings, MET returned the only payment that it had received from Hologenix under the Settlement Agreement— the initial $100,000 payment.

---

[1] The Court draws the background from the PTO.

EXHIBIT 3

2

## A.    Procedural History

MET subsequently filed this action against Casden.  (*See* First Am. Compl. ("FAC"), ECF No. 24.)   MET asserted four causes of action: (1) violation of the Lanham  Act,  15 U.S.C.  § 1125(A)(1)(B);  (2) false  advertising  under  California Business & Professions Code section 17500; (3) unfair competition under California Business  &  Professions  Code  section  17200;  and  (4) tortious  interference  with contractual relations.  (*Id.* ¶¶ 76–108.)

From June 20 to 23, 2023, MET tried its claims before this Court and a jury. (*See* Mins. Trial, ECF Nos. 177–80.)  After the close of evidence, both parties moved for judgment as a matter of law pursuant to Rule 50(a).  (*See* Trial Tr. ("Tr.") 455:21 to 487:1, ECF Nos. 243–46.)  The Court granted in part only MET's Rule 50(a) motion, with respect to its claim for tortious interference.  (Tr. 491.)  In doing so, the Court found that Casden acted to advance his personal interests when he tortiously interfered with the Settlement Agreement, thus foreclosing any agency immunity defense.  (*Id.* at 492.)

Nonetheless, at Casden's request, the Court submitted to the jury for advisory findings two questions related to Casden's agency immunity defense.  (*Id.* at 493:19 to 497:2; Verdict 4.)   Consistent with the Court's ruling, the jury issued an advisory finding  that  Casden  acted  to  advance  his  own  personal  interests.   (Verdict 4.) Relatedly,  the  jury  returned  an  advisory  verdict  in  MET's  favor  on  its  tortious interference cause of action with an award of $1 in nominal damages.  (*Id.*)  The jury also returned a verdict in MET's favor on its Lanham Act false advertising cause of action, similarly awarding $1 in nominal damages.  (*Id.* at 1–2.)

Several  issues  remained  for  the  Court's  resolution.   (PTO 2.)   The  Court expanded on the factual and legal bases for its ruling on MET's Rule 50(a) motion, granting judgment as a matter of law for MET on the claim for tortious interference and rejecting Casden's agency immunity defense.  (*Id.* at 4–9.)  The Court awarded MET $2.5 million in damages on the tortious interference claim.  (*Id.* at 9–10.)  On the

EXHIBIT 3

3

Lanham Act false advertising claim, the Court found that MET is entitled to disgorgement of Casden's profits, treble damages, and attorneys' fees. (*Id.* at 10–13.) Similarly, the Court found Casden liable for false advertising and unfair competition under California law, and issued a permanent injunction. (*Id*. at 13–16.) Finally, the Court denied MET's requests for punitive damages and restitution. (*Id.* at 10, 14–16.) On September 26, 2023, the Court entered judgment consistent with these determinations, awarding MET monetary and injunctive relief. (J., ECF No. 199.)

**B.    Post-Trial Proceedings**

On October 10, 2023, MET moved for an order awarding attorneys' fees pursuant to the Court's PTO and the Lanham Act. (First Mot. Att'ys' Fees, ECF No. 204.) On October 13, 2023, Casden moved to alter or amend the judgment, and for judgment as a matter of law ("JMOL") or in the alternative for a new trial. (Mot. Alter-Am., ECF No. 209; Mot. JMOL, ECF No. 210.) Also on October 13, 2023, Casden filed an ex parte application seeking an order staying execution of the monetary component of the judgment and a waiver or reduction of the supersedeas bond for an appeal. (Ex Parte Appl., ECF No. 208.) In the ex parte application, Casden stated that without a stay, "he will have no choice but to immediately file personal bankruptcy." (*Id.* at 3.) On October 17, 2023, before the Court ruled on Casden's application, he filed for bankruptcy. (Notice Bankruptcy, ECF No. 212.) Consequently, the Court stayed the case pursuant to 11 U.S.C. § 362's automatic bankruptcy stay. (Stay Order, ECF No. 213.) The Court denied all pending motions as moot, with leave to renew the motions upon the stay being lifted. (*Id.*)

On June 11, 2024, Casden obtained an order from the bankruptcy court lifting the automatic stay in this action, "to permit [Casden] to proceed with his challenges to the judgment obtained by MET," "including pursuing [his] post-trial motions, all post-judgment challenges, any and all appeals, including from the Judgment, and any retrial and/or remand." (Status Report Ex. A ("Bankruptcy Court Order") 2, ECF No. 217.) The stay was also lifted "for MET to pursue its motion for attorney's fees."

EXHIBIT 3

4

(*Id.*)  On July 19, 2024, the parties notified the Court of the Bankruptcy Court's order and, on July 31, 2024, the Court lifted the stay.  (Lift Order, ECF No. 222.)

Casden now renews his three post-trial motions.  First, Casden renews his renewed motion for judgment as a matter of law pursuant to Rule 50(b), or alternatively for a new trial pursuant to Rule 59(a).  (Renewed Mot. JMOL ("Mot. JMOL"), ECF No. 218.)  Second, Casden renews his motion to alter or amend the judgment pursuant to Rule 59(e).  (Renewed Mot. Am. J. ("Mot. AJ"), ECF No. 219.)  Third, Casden moves to waive the requirement of a bond on appeal and stay execution of the monetary component of the judgment.  (Mot. Waive Bond & Stay Enforcement ("Mot. Waive & Stay"), ECF No. 220.)  Additionally, MET renews its motion for attorneys' fees.  (Renewed Mot. Att'ys' Fees ("Mot. Fees"), ECF No. 228.)  The Court considers each motion in turn.

## III.   MOTION FOR JUDGMENT AS A MATTER OF LAW—RULE 50(b)

Casden renews his Rule 50(b) motion for judgment as a matter of law on the grounds that there is no legally sufficient basis for finding in MET's favor on MET's Lanham Act and tortious interference causes of action.  (Mot. JMOL 2–3, 11.)

### A.   Legal Standard—Rule 50(b)

To succeed on a renewed motion for judgment as a matter of law under Rule 50(b), the moving party must: (1) have raised the issues in its pre-verdict Rule 50(a) motion; and (2) demonstrate that there is "no legally sufficient basis for a reasonable jury" to have found in the non-moving party's favor.  *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001); *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1081 (9th Cir. 2009) (discussing the procedural requirement for a Rule 50(a) pre-verdict motion).  The issues raised in the pre-verdict motion must be specific enough to notify the court and the opposing party of the underlying issue.  *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990).  Thus, where a party did not raise grounds in a pre-verdict Rule 50(a) motion, a court

EXHIBIT 3

5

1  may not grant judgment as a matter of law on that basis.  *E.E.O.C. v. Go Daddy*
2  *Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).

3      In ruling on a Rule 50(b) motion, judgment as a matter of law is appropriate "if
4  the evidence, construed in the light most favorable to the nonmoving party, permits
5  only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."
6  *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014); *Reeves v.*
7  *Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) ("[A] court should render
8  judgment as a matter of law when . . . there is no legally sufficient evidentiary basis
9  for a reasonable jury to find for [the prevailing] party on that issue." (internal
10  quotation marks omitted)).  However, "[a] jury's verdict must be upheld if it is
11  supported by substantial evidence that is adequate to support the jury's findings, even
12  if contrary findings are also possible."  *Escriba*, 743 F.3d at 1242.  "Substantial
13  evidence" means such relevant evidence as a reasonable mind might accept as
14  adequate to support a conclusion.  *Fisher v. City of San Jose*, 558 F.3d 1069, 1074
15  (9th Cir. 2009).

16      The standard under Rule 50(b) mirrors that of summary judgment in that, while
17  the court must scrutinize the entire evidentiary record, it may not make credibility
18  determinations or weigh the evidence.  *Reeves*, 530 U.S. at 150.  The court must
19  "disregard all evidence favorable to the moving party that the jury is not required to
20  believe."  *Id.* at 151.  Thus, "when two sets of inferences find support in the record,
21  the inferences that support the jury's verdict of course win the day."  *Winarto*,
22  274 F.3d at 1287.

23  **B.  Discussion—Rule 50(b)**

24      Casden seeks judgment as a matter of law as to MET's Lanham Act and tortious
25  interference causes of action, on the grounds that MET failed to prove the elements of
26  the claims or support the damages awarded.  (Mot. JMOL 11.)  As Casden's arguments
27  are unavailing, the Court **DENIES** the Rule 50(b) motion, for the following reasons.

28

EXHIBIT 3

6

1    *1.    Lanham Act—Rule 50(b)*

2    The jury returned a verdict in favor of MET on its Lanham Act cause of action,

3    finding that: (1) Casden made false statements of fact about his own or another's

4    product after March 6, 2020; (2) the statement was made in a commercial

5    advertisement or promotion; (3) the statement was deliberately or intentionally false;

6    (4) the statement actually deceived or had the tendency to deceive a substantial

7    segment of its audience; (5) the deception was material; (6) Casden caused the false

8    statement to enter interstate commerce; and (7) MET was or is likely to be injured as a

9    result of the false statement due to a diversion of sales or a lessening of goodwill.

10   (Verdict 1–2.)  Although the jury awarded $1 in nominal damages, the Court found it

11   appropriate to award disgorgement of Casden's profits, trebled.  (*Id.* at 2; PTO 10–13.)

12   In challenging the Lanham Act verdict and judgment, Casden contends there is

13   no legally sufficient basis for the jury's verdict in MET's favor as to the findings

14   regarding: (1) false statement, (3) deliberate and intentional falsity, (4) actual or likely

15   deception, and (7) that MET was or is likely to be injured.  (Mot. JMOL 2.)  Casden

16   also argues against the Court's order awarding disgorgement of Casden's salary and

17   the Court's finding that the case is "exceptional" under the Lanham Act for awarding

18   attorneys' fees.  (Mot. JMOL 3, 28–29.)  Casden did not challenge in his Rule 50(a)

19   motion that Casden's statements were "deliberately or intentionally false," or that the

20   case is exceptional for awarding attorneys' fees.  (*See generally* Tr. 474–81, 492–94.)

21   Thus, he may not raise these bases for his renewed motion under Rule 50(b).

22   *E.E.O.C.*, 581 F.3d at 961.  As to his remaining grounds for judgment as a matter of

23   law, the Court finds the evidence admitted at trial was adequate to support the

24   findings.  *Escriba*, 743 F.3d at 1242.

25   (a)    False statements, deception, and injury

26   Casden argues MET did not prove Casden made false statements or that any

27   statements he made actually deceived or had the tendency to deceive customers.

28   (Mot. JMOL 15.)

EXHIBIT 3

7

Where an advertisement is literally false, a presumption arises that consumers were in fact deceived and the burden shifts to the defendant to prove otherwise. *Avid Identification Sys. v. Schering-Plough Corp.*, 33 F. App'x 854, 856 (9th Cir. 2002).

MET identifies substantial evidence in the record that is adequate to support the jury's findings, that Casden made "false statements of fact about his own or another's product after March 6, 2020" and "the statement actually deceived or had the tendency to deceive a substantial segment of its audience." (Verdict 1.) Specifically, the jury viewed exhibits that reflect the statements Casden authorized or made himself, and they heard testimony from Casden acknowledging his discovery admissions that those statements were not true. (*See* Opp'n Mot. JMOL 2–3, ECF No. 234 (citing Exs. 36, 72, 91, 108; Tr. 374–75).) This evidence is sufficient such that a reasonable jury could find the statements literally false. Consequently, MET did not have to prove deception, as it is presumed as a matter of law. *See Avid*, 33 F. App'x at 856 ("Because these representations were literally false, the statements carry with them the presumption that consumers relied on and were deceived by them."). Regardless of the presumption, testimony and evidence supports the jury's further findings that the statements were deceptive, material, and caused MET to lose business. (*See, e.g.*, Tr. 170:3–4, 172:8–10, 173:6–7, 173:23–25, 178:3–17 (testimony from MET's CEO that MET lost clients to Hologenix linked to Casden's "false FDA claims").)

(b)    Disgorgement of Casden's salary as profits and trebling

Casden also argues there is no legally sufficient basis for the Court's finding that Casden's salary resulted with reasonable certainty from his false statements or for the Court's trebling of that sum. (Mot. JMOL 17–20.)

Under 15 U.S.C. § 1117(a), the Court has the discretion to award up to three times the "financial benefit [Casden] received because of the [false] advertising." *U-Haul Intern., Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1042 (9th Cir. 1986). In assessing this financial benefit, it is the plaintiff's "burden to show with reasonable certainty [the defendant's] gross sales from [the infringing activity]." *Rolex Watch, U.S.A., Inc.*

EXHIBIT 3
8

*v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999).  "Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity."  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016).  "The defendant thereafter bears the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead."  *Id.*

As the Court found in the PTO, MET presented evidence at trial that Casden received an annual salary of $300,000 as CEO of Hologenix since 2019.  (PTO 11; Tr. 316:11.)  It is undisputed that the only product Hologenix sells is Celliant, such that all salary paid to Casden from Hologenix derives from the sales of Celliant.  (*See* PTO 11.)  Accordingly, the Court determined that Casden's salary for the relevant time period when he made the false statements should be considered his "profits" from engaging in the false advertising of Celliant.  (*Id.*)  As Casden offered no evidence that his salary from Hologenix was not attributable to his false advertising or that any deductions should apply, the Court awarded disgorgement of Casden's salary for the relevant time period as Casden's profits derived from his false advertising of Celliant.  (*Id.* (calculating that total to be $983,171).)

Further, the evidence was more than adequate to support the jury's and the Court's findings that Casden's false statements were "deliberately and intentionally false."  (PTO 12 (quoting Verdict 1 and discussing the "substantial evidence of the willful and deliberate nature of Casden's false advertising").)  The Court determined that the deliberate and willful nature of Casden's conduct warranted trebling the award of Casden's financial benefit.  (*Id.* at 12–14).  This trebling is not a "penalty" or "windfall," as Casden argues. (Mot. 18–19.)  Rather, the trebled amount is the amount the Court found to be "just, according to the circumstances of the case."  15 U.S.C. § 1117(a).

EXHIBIT 3

9

### 2. Tortious Interference—Rule 50(b)

The Court granted MET's Rule 50(a) motion as to MET's claim for tortious interference with contractual relations and rejected Casden's agency immunity and *Noerr-Pennington* doctrine defenses. (Tr. 491–92; *id.* at 481.) At Casden's request, the Court submitted to the jury for advisory findings two questions related to Casden's agency immunity defense. (*Id.* at 496–99 (colloquy on two advisory questions); Verdict 4 (Nos. 15–16).) The jury issued an advisory finding consistent with the Court's ruling, that Casden was acting to advance his own personal interests when he interfered with the Settlement Agreement. (Verdict 4 (No. 16).) The Court awarded MET the monetary value of the Settlement Agreement in damages, $2.5 million. (PTO 10.)

In challenging the advisory verdict and judgment on MET's tortious interference cause of action, Casden contends there is no legally sufficient basis for a finding in MET's favor, that (a) "the *Noerr-Pennington* doctrine did not shield Casden from liability"; (b) "the agency immunity doctrine did not shield Casden from liability"; and (c) Casden's statements breached the Settlement Agreement or caused $2.5 million in damages. (Mot. JMOL 2–3, 20–28.) He also argues that the jury's advisory tortious interference verdict awarding MET $1 nominal damages was a final determination, binding on the Court. (*Id.* at 23–24.)

Casden did not raise in his Rule 50(a) motion that his statements did not violate or breach the Settlement Agreement; or that they did not cause $2.5 million in damages; or that the jury's advisory agent-immunity-verdict would somehow render a final binding damages figure. (*See generally* Tr. 474–81, 492–94.) Thus, he may not raise these as bases for his renewed motion under Rule 50(b). *E.E.O.C.*, 581 F.3d at 961. As to his remaining grounds, the Court finds the evidence admitted at trial was adequate to support the Court's and the jury's findings, as follows.

EXHIBIT 3

10

### (a) *Noerr-Pennington* doctrine

The Court and the parties addressed Casden's *Noerr-Pennington* arguments at length, before, during, and after trial.  The Court concluded that the *Noerr-Pennington* doctrine was inapplicable to MET's tortious interference claim, including because the gravamen of the claim is non-petitioning activity, liability is premised on more than only Casden's vote for Hologenix's bankruptcy, and MET's claim for tortious interference with the Settlement Agreement is not in the nature of anti-trust.

In his Rule 50(b) motion, Casden recycles the *Noerr-Pennington* arguments he has previously raised.  (*See generally* Def.'s Pocket Br., ECF No. 171; Tr. 23–27; Mot. 20–23.)  The Court finds them no more compelling now than when it determined the doctrine was inapplicable before the trial began.  (*See* Tr. 6:15 ("*Noerr-Pennington*, that's—it's not an issue."); *id.* at 25:17–20 ("[Y]ou want to use *Noerr-Pennington*, and you're just trying to find a way to somehow insert that into this case. I don't see that it's applicable at all.").  Accordingly, for all the reasons previously discussed, the *Noerr-Pennington* doctrine does not apply here to immunize Casden from liability on MET's tortious interference cause of action.[2]

### (b) Agency immunity doctrine

Similarly, the Court and the parties addressed Casden's agency immunity arguments at length, before, during, and after trial.  (Prop. Pretrial Conf. Order 11, ECF No. 129; Tr. 17–20, 459–62, 476–81, 492–99.)  After the conclusion of evidence, the Court determined that the agency immunity defense was inapplicable in light of the exceptional facts of this case and Casden's tortious conduct for his own personal interests.  (PTO 7–9.)

In his Rule 50(b) motion, Casden repeats the agency immunity arguments he has previously raised.  (*See* Mot. 26–28.)  As with the *Noerr-Pennington* defense, the

---

[2] As the Court finds the gravamen of MET's tortious interference claim is non-petitioning activity, it need not and does not reach the question of whether Hologenix's bankruptcy filing was a sham. Accordingly, Casden's supplemental authority, *Relevant Grp., LLC v. Nourmand*, 116 F.4th 917 (9th Cir. 2024), is inapposite.  (*See* Statement Recent Decision, ECF No. 251.)

EXHIBIT 3
11

Court finds Casden's agency immunity arguments no more compelling now than when the Court granted MET's Rule 50(a) motion on the tortious interference cause of action.  The Court already rejected Casden's agency immunity defense.  (Tr. 492:7–11.)  It expanded on that conclusion in the PTO, finding that "Casden tortiously interfered with the Settlement Agreement for his own personal benefit such that the agency immunity defense does not apply."  (PTO 7–9.)  Accordingly, for the reasons stated on the record and in the PTO, the agency immunity doctrine does not immunize Casden from liability on MET's tortious interference cause of action.

(c)    Advisory damages verdict

Notwithstanding Casden's failure to raise the argument in his Rule 50(a) motion, that the jury's advisory tortious interference verdict should render a final and binding damages figure, the Court finds it would be beneficial to address this issue, as it is relevant to arguments in Casden's other post-trial motions as well.

MET argued in its Rule 50(a) motion that it was entitled to judgment as a matter of law on the entirety of its tortious interference claim, including the element of harm, which it argued included the $2.5 million owed under the breached Settlement Agreement.  (Tr. 461:5–7.)  When Casden subsequently argued his Rule 50(a) motion, he *conceded* that *all elements* of the tortious interference claim had been met, except the agency immunity defense.  (*Id.* at 476:6–8 ("On the intentional interference with contractual relations, all elements are met except for the agency element which is plainly not met.").)  And again, after the Court's tentative ruling, Casden repeated that concession.  (*Id.* at 492:22–24 ("Mr. Casden at this point concedes that all of the elements but for the agency defense or agency immunity have been met by Plaintiff.").)  "All elements" necessarily includes the elements of causation and harm.  (*See* PTO 5–7 (finding each element satisfied by evidence admitted at trial).)  Casden did not argue otherwise in opposing MET's Rule 50(a) motion or in arguing in support of his own.  (*See generally* Tr. 474–81, 492–94.)

EXHIBIT 3

12

Thus, when the Court granted MET's Rule 50(a) motion on tortious interference cause of action, that grant included finding that MET had established its harm: "The Court has concluded that at least in its view plaintiff is entitled to judgment as a matter of law with respect to the tortious interference with contractual relations cause of action." (*Id.* at 491:17–21.)  "The Court has actually been somewhat expressive in terms of its view of that particular cause of action and the facts underlying that claim. And the Court doesn't believe that it's seriously a close call." (*Id.* at 491:22–25.)

In granting judgment as a matter of law on the tortious interference claim, the Court rejected Casden's agency immunity defense and found that Casden was acting in his own personal interests when he interfered with the Settlement Agreement.  (*Id.* at 492:7–11.)  Although the Court granted Casden's request to submit two questions regarding the agency immunity defense to the jury for an advisory finding, (PTO 9), the Court made it clear that the jury's findings would not be binding: "Keep something in mind. These issues that we submit to the jury and whatever their conclusions are, are advisory only. And I'm free to accept them or reject them." (Tr. 496:11–14).  *See Hannibal Pictures, Inc. v. Sonja Prods., LLC*, No. 2:06-cv-01814 WDK (VBKx), 2009 WL 10673572, at *1 (C.D. Cal. Aug. 31, 2009) (stating the accepted rule that a district court may "accept or reject the advisory jury's verdict, [and] the advisory jury's decision is not binding on the district court"), *aff'd*, 432 F. App'x 700 (9th Cir. 2011); *see also Ashland v. Ling–Temco–Vought, Inc.*, 711 F.2d 1431, 1438 (9th Cir. 1983) (treating findings of the court, when tried with an advisory jury, "as if there had been no verdict from an advisory jury"); *Cutter Lab'ys v. R.W. Ogle & Co.*, 151 Cal. App. 2d 410, 418–19 (1957) (noting, when the jury's verdict is "merely advisory," that such verdict "does not bind the court").  The advisory jury's verdict was just that: advisory.

Further, Casden requested only that the two agency immunity defense questions be submitted to the advisory jury—he did not seek to also submit the question of damages, nor any other element of the cause of action. (*See* Tr. 493:22–25 (requesting

EXHIBIT 3

13

advisory findings on only the "agency immunity question"), 497:6–10 ("Our proposal would be to submit . . . this agency question in[] two questions . . . for an advisory opinion.").)  As stated in the PTO, the damages line on the verdict form was present only to avoid signaling that a determination had already been made on the cause of action or any of its constituent parts.  (PTO 10.)  Thus, the advisory questions submitted to the jury included only whether Casden acted as an agent and/or in his own personal best interests.  (Verdict 4 (Nos. 15–16).)  The advisory question was <u>not</u> what damages to award for the tortious interference cause of action, and the jury's finding on that question is not binding.

## C.    Conclusion—Rule 50(b)

Having considered the entire record and construed reasonable inferences in favor of the verdict and judgment, and without making credibility determinations or weighing the evidence, the Court finds substantial evidence exists to support the jury's and the Court's findings in the verdict, PTO, and judgment, as discussed above.  Further, the Court concludes there is a legally sufficient basis for the findings that *Noerr-Pennington* and agency immunity doctrines do not apply to shield Casden from liability on the tortious interference claim.  Accordingly, the Court **DENIES** Casden's renewed Rule 50(b) motion for judgment as a matter of law.  (ECF No. 218.)

## IV.    MOTION FOR NEW TRIAL—RULE 59(a)

Casden moves in the alternative for a new trial pursuant to Rule 59(a).  He argues that a new trial is necessary because the jury's verdict is against the clear weight of the evidence, the Court committed prejudicial evidentiary errors, and the Court awarded excessive damages.  (Mot. JMOL 3, 12.)

## A.    Legal Standard—Rule 59(a)

Rule 59(a) governs motions for a new trial.  *Kim v. BMW Fin. Servs. NA, LLC*, 142 F. Supp. 3d 935, 946 (C.D. Cal. 2015).  Under Rule 59(a), a court may grant a new trial "on all or part of the issues, 'for any reason for which a new trial has heretofore been granted in an action at law in federal court.'"  *Id.* (quoting Fed. R.

EXHIBIT 3
14

Civ. P. 59(a)).  This includes a verdict that is "contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice."  *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001).  To establish a miscarriage of justice on the basis of legal error, the error must have substantially prejudiced a party.  *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995); *see also E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997) (stating that a new trial may be granted "only if the verdict is against the great weight of the evidence or it is quite clear that the jury has reached a seriously erroneous result" (internal quotation marks omitted)).

Unlike a Rule 50(b) motion, a motion for a new trial is not limited by a pre-verdict Rule 50(a) motion.  *See Medisim Ltd. v. BestMed, LLC*, 758 F.3d 1352, 1359 (Fed. Cir. 2014).  Additionally, "[t]he district court can weigh the evidence and assess the credibility of the witnesses," and need not "view the trial evidence in the light most favorable to the verdict."  *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014).  Still, "a district court may not grant a new trial simply because it would have arrived at a different verdict."  *Silver Sage*, 251 F.3d at 819.  Indeed, it is the court's duty "to reconcile the jury's special verdict responses on any reasonable theory consistent with the evidence."  *Guy v. City of San Diego*, 608 F.3d 582, 586 (9th Cir. 2010) (quoting *Pierce v. S. Pac. Transp. Co.*, 823 F.2d 1366, 1370 (9th Cir. 1987)).  Ultimately, "[t]he grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court.'"  *Murphy*, 914 F.2d at 186 (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)).

**B.    Discussion—Rule 59(a)**

Casden raises five grounds for a new trial: (1) the Court's disgorgement of Casden's pre-tax salary as profits (Lanham Act); (2) the Court's finding that this case was "exceptional" (Lanham Act); (3) the Court's "exclusion of the *Noerr-Pennington*

EXHIBIT 3
15

doctrine" defense (tortious interference); (4) the Court's "misapplication of the law with respect to the agency immunity defense" (tortious interference); and (5) the Court's "excessive and incorrect" tortious interference damages award.  (Mot. JMOL 3.)  These grounds "overlap with those raised in Casden's renewed motion for judgment as a matter of law," and Casden submits the same arguments addressed above as supporting a new trial. (Mot. JMOL 12, 29–30 ("For the reasons set forth above . . . the Court should order a new trial, in its discretion, under Rule 59.").)  Casden does not specify which of these grounds he contends are "against the clear weight of the evidence" and which he contends constitute "prejudicial evidentiary error." (*See* Mot. JMOL 3.)  As such, with the exception of his argument that the tortious inference damages are excessive, the Court evaluates each of Casden's grounds for a new trial with respect to both the clear weight of the evidence and prejudicial evidentiary error.

Under Rule 59(a), unlike Rule 50(b), the Court independently weighs the evidence and assesses witness credibility.  *See Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246, 256 (9th Cir. 1957) (distinguishing the disparate standards for reviewing evidence on a motion for new trial as opposed to a motion for judgment as a matter of law).  As the Court finds Casden's arguments unavailing, the Court **DENIES** the Rule 59(a) motion, for the following reasons.

1.    *Disgorgement (Lanham Act)—Rule 59(a)*

Casden seeks a new trial based on the "Court's disgorgement of Casden's pre-tax salary as 'profits' with respect to MET's Lanham Act claim, including the lack of any reasonable certainty that any false statements caused Casden to receive the salary, or the amount of the salary, and the Court's trebling of the disgorgement." (Mot. JMOL 3, 17–20.)   For the same reasons discussed above, the Court's determination in the PTO, that Casden's salary should be deemed as profits for the purposes of Lanham Act and under the unique circumstances of this case, is not against the clear weight of evidence or error. *See above* Section III.B.I.(b).

EXHIBIT 3
16

2.      *Exceptional (Lanham Act)—Rule 59(a)*

Casden seeks a new trial based on the "Court's finding that this was an 'exceptional case' under the Lanham Act for purposes of awarding MET attorneys' fees." (Mot. JMOL 3, 28–29.)

The Court's finding that the case is exceptional for the purposes of awarding attorneys' fees is neither against the clear weight of the evidence nor an error of law. Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Exceptional cases" may include those in which a defendant's conduct is "fraudulent, deliberate, or willful." *Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1039 (9th Cir. 2007). In determining whether a case is exceptional for awarding fees, the court exercises it discretion based on the "totality of the circumstances" using a preponderance of the evidence standard. *SunEarth*, 839 F.3d at 1181; 15 U.S.C. § 1117(a).

As noted, the jury returned a verdict in MET's favor on its Lanham Act claim, including specific findings that Casden made false statements of fact about his own or another's product that were "deliberately or intentionally false." (Verdict 1.) The evidence admitted at trial easily supported the jury's findings. (*See* PTO 12 (discussing abundant evidence at trial supporting that Casden's statements were "deliberately or intentionally false").) In evaluating whether the case should be considered "exceptional" under the Lanham Act, the Court found the deliberate and willful nature of Casden's conduct strongly supported such a finding. (*Id.* at 12–13.) As this is a sufficient basis for finding the case exceptional under the Lanham Act, *Horphag*, 475 F.3d at 1039, Casden's further arguments on this point are unpersuasive, (*see* Mot. JMOL 28–29).

EXHIBIT 3

17

Accordingly, the Court's determination, that the deliberate and willful nature of Casden's conduct renders this an exceptional case for which MET is entitled to attorneys' fees, is not against the clear weight of evidence or error.

### 3. & 4. Excluded Defense Doctrines (Tortious Interference)—Rule 59(a)

Casden seeks a new trial based on the "Court's exclusion of the *Noerr-Pennington* doctrine" and the "Court's misapplication of the law with respect to the agency immunity defense." (Mot. JMOL 3, 20–23, 26–28.)

For the same reasons discussed above, the Court's determination, that the *Noerr-Pennington* doctrine does not apply to immunize Casden from liability on MET's tortious interference cause of action, is not against the clear weight of evidence or error. *See above* Section III.B.2.(a). Similarly, the Court's determination, that "Casden tortiously interfered with the Settlement Agreement for his own personal benefit such that the agency immunity defense does not apply," (PTO 7–9), is also not against the clear weight of evidence or error. *See above* Section III.B.2.(b).

The Court and the parties have addressed these doctrines at length. (*See, e.g.,* Def.'s Pocket Brief; Pl.'s Pocket Brief, ECF No. 172; Tr. 6–25, 455–94; PTO 7–9.) Based on the law and the evidence at trial, the Court found *Noerr-Pennington* inapplicable and agency immunity precluded by Casden's conduct for personal benefit. As Casden preserves these issues for appeal, the Court welcomes clarity and guidance from the Ninth Circuit.

### 5. Excessive Damages (Tortious Interference)—Rule 59(a)

Finally, Casden argues a new trial is necessary based on the "Court's excessive and incorrect damages award with respect to MET's tortious interference with contractual relations cause of action." (Mot. JMOL 3.) In the body of the motion, Casden's only argument touching upon tortious interference damages is that the evidence does not support that his false statements caused Hologenix to breach the Settlement Agreement, and even if his statements did, there is no evidence that they caused MET $2.5 million in damages. (*Id.* at 23–26.)

EXHIBIT 3

18

Casden's arguments here contradict express concessions he made during his Rule 50(a) motion. As discussed, *see above* Section III.B.2.(c), MET argued that it was entitled to judgment as a matter of law on the entirety of its tortious interference claim. MET asserts that Casden's tortious interference harmed MET by depriving it of the $2.5 million. (Tr. 459:4–61:12.) Casden then conceded that MET had established "all elements" of the tortious interference claim. (*See id*. at 476:6–8, 492:22–24.) The only issue he reserved was that of agency immunity. (*Id.*) Thus, Casden conceded, as MET had argued, that Casden's false statements caused Hologenix to breach the Settlement Agreement and harmed MET, including depriving MET of the monetary value of its bargain.

Casden argues that the Settlement Agreement does not prohibit him from making false statements because it only required Hologenix to request entry of a permanent injunction prohibiting those statements. (*See* Mot. JMOL 24, 25 (arguing that the Settlement Agreement only required Hologenix to request that the Court enter a permanent injunction prohibiting specific false statements; it did not itself prohibit those statements).) This nonsensically exalts form over substance. The evidence admitted at trial established that a significant aspect of the Settlement Agreement was to stop Hologenix and Casden's repetition of the false statements. The parties in that case resolved this conflict by agreeing in the Settlement Agreement that specific statements would be prohibited and effectuated that agreement by stipulating to a permanent injunction. Casden helped negotiate those terms. His immediate, willful, and continued use of the very false statements he had agreed would be prohibited violated the agreement.

Finally, the Court's award of $2.5 million in damages on the tortious interference cause of action is within reason. *See Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 232 (2005) (noting the measure of damages for tortious interference with contract includes "[t]he financial loss of the benefits of the [contract]" (alterations in original).). Evidence at trial established that the Settlement

EXHIBIT 3

19

Agreement with which Casden interfered had a monetary value of $2.5 million.  MET argued Casden's tortious conduct deprived it of this value, and Casden conceded MET established the entire cause of action.  Accordingly, the Court's award of the value of the contract is consistent with the record, supported by and based on the evidence, and not grossly excessive.  *Cf. Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 276, 299, 303 (2017) (finding a damages award "excessive" where it "shock[ed] the conscience and suggest[ed] passion, prejudice or corruption on the part of the" factfinder).

## C.    Conclusion—Rule 59(a)

Having reviewed the entire record, weighed the evidence, and assessed witness credibility pursuant to Rule 59(a), the Court finds the evidence supports the jury's verdict and the Court's judgment, neither of which amounts to a miscarriage of justice. Accordingly, in its discretion, the Court **DENIES** Casden's Rule 59(a) motion for a new trial.  (ECF No. 218.)

## V.    MOTION TO ALTER OR AMEND JUDGMENT—RULE 59(e)

Casden also moves to alter or amend the judgment under Rule 59(e), on the same grounds as the above motions.  (*See* Mot. AJ 2, 10.)  Indeed, the issues and arguments raised in this motion are identical to those in his motion for a new trial. (*Compare* Mot. JMOL 2, *with* Mot. AJ 2.)

## A.    Legal Standard—Rule 59(e)

"Although Rule 59(e) permits a district court to reconsider and amend a previous [judgment], the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks omitted). "[A] motion for reconsideration [under Rule 59(e)] should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence," clear error, an intervening change in controlling law, or manifest injustice.  *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003).

EXHIBIT 3

20

A motion to alter or amend a judgment "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008); *Kona*, 229 F.3d at 890. Therefore, a court may disregard "repeated legal arguments" and "facts that were available earlier in the proceedings." *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001). A district court has considerable discretion when considering a motion to amend a judgment under Rule 59(e). *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir.1999); *Arteaga v. Asset Acceptance*, 733 F. Supp. 2d 1218, 1236 (E.D. Cal. 2010).

**B.    Discussion—Rule 59(e)**

Casden argues the judgment must be amended with respect to the Lanham Act and tortious interference claims, to correct manifest errors of law and fact and to prevent manifest injustice. (Mot. AJ 10.) Casden's arguments are based on many of the same grounds as in his prior two motions. As Casden's arguments are again unavailing, the Court **DENIES** the Rule 59(e) motion, for the following reasons.

*1.    Lanham Act—Rule 59(e)*

Casden seeks to amend the judgment as to the Lanham Act claim, arguing the Court erred by ordering disgorgement of Casden's salary as profits, by trebling those profits, and by finding this case "exceptional" under the Lanham Act for purposes of awarding attorneys' fees. (*Id*. at 10 (Nos. 4 & 5).)

As to disgorgement, in his Rule 50(a) motion, Casden argued that his salary should not be considered profits under the Lanham Act. (Tr. 475:15–476:4.) Therefore, the Court disregards this repeated argument. (*Compare id.*, *with* Mot. AJ 24–25.) *Zimmerman*, 255 F.3d at 740; *Kona*, 229 F.3d at 890. And in any event, the Court addressed this argument above.

The Court also already addressed trebling and "exceptional." *See above* Sections III.B.1.(b), IV.B.2. As to trebling, the Court found that the deliberate and willful nature of Casden's conduct warranted trebling the award of Casden's "profits"

EXHIBIT 3

21

under the Lanham Act "[a]ccording to the circumstances of the case."  (PTO 12 (quoting 15 U.S.C. § 1117(a)).)   Casden argues the Lanham Act permits monetary damages to be trebled, but that the Court exceeded its discretion by trebling disgorgement here.  (Mot. AJ 23.)   However, in the next sentence, he acknowledges that "the Court has discretion to adjust the amount of the disgorgement of Casden's 'profits.'"  (*Id.* (citing 15 U.S.C. § 1117(a)).)   It exercised that discretion here by trebling Casden's profits.  (PTO 15.)   Turning to "exceptional," the Court found that the deliberate and willful nature of Casden's conduct supported finding the case exceptional under the Lanham Act for purposes of awarding attorneys' fees.  (*Id.* at 11–13.)   Therefore, for the reasons previously stated, the Court does not find the trebled award or exceptional finding to be the result of a manifest error or to constitute manifest injustice.

### 2.    *Tortious Interference—Rule 59(e)*

Casden seeks to amend the judgment on the tortious interference cause of action, arguing the Court erred by excluding Casden's *Noerr-Pennington* and agency immunity defenses, and by awarding excessive damages.  (Mot. AJ 10 (Nos. 1–3).)

Casden raised the *Noerr-Pennington* and agency immunity defenses prior to judgment, in pretrial briefing, in pretrial argument, and during his Rule 50(a) motion. Therefore, the Court need not address these repeated arguments.  *Zimmerman*, 255 F.3d at 740; *Kona*, 229 F.3d at 890.

Casden could have argued that awarding the monetary value of the Settlement Agreement was excessive before entry of judgment, but he did not.  Specifically, MET raised the issue in its Rule 50(a) motion when it argued it was entitled to $2.5 million on the tortious interference claim.  (Tr. 461:5–12.)   As Casden could have, but failed to, raised this challenge before judgment, he may not seek an amended judgment on this basis now.  *See Exxon Shipping*, 554 U.S. at 485 n.5; *Kona*, 229 F.3d at 890.   In any event, the Court has addressed Casden's argument regarding excessive tortious interference damages above.  *See above* Section IV.B.5.  For the reasons previously

EXHIBIT 3

22

stated, the Court does not find the awarded tortious interference damages to be the result of a manifest error or to constitute manifest injustice.

**C.    Conclusion—Rule 59(e)**

For the reasons discussed, the Court declines to grant the "extraordinary remedy" of Rule 59(e), *see Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014), and therefore **DENIES** Casden's motion to alter or amend the judgment, (ECF No. 219).

## VI.    MOTION TO WAIVE BOND & STAY ENFORCEMENT

The Court next addresses Casden's Motion to Waive Requirement of Bond and Stay Enforcement of Judgment. (Mot. Waive & Stay.)

Through this motion, Casden seeks an order staying execution of the monetary component of the Judgment pending (1) resolution of his post-trial motions and (2) completion of appellate proceedings. (*Id.* at 8.) If the Court declines to issue this relief, Casden asks the Court for a stay pending resolution of a motion to stay to be filed with the Ninth Circuit. (*Id.*) Additionally, Caden moves for an order permitting him to appeal without posting a supersedeas bond, or in the alternative, with bond in an amount less than the full amount required by the Judgment. (*Id.*)

**A.    Legal Standard—Waive & Stay**

A final judgment is generally enforceable thirty days after it is entered even while an appeal of that judgment is pending. Fed R. Civ. P. 62(a). However, a party may stay enforcement of a judgment if it posts a supersedeas bond. *See* Fed R. Civ. P. 62(b). "The purpose of a supersedeas bond is to secure the appellees from a loss resulting from the stay of execution." *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987).

"District courts have inherent discretionary authority in setting supersedeas bonds." *Id.* This includes "broad discretionary power to waive the bond requirement if it sees fit." *Cotton ex rel. McClure v. City of Eureka*, 860 F. Supp. 2d 999, 1027 (N.D. Cal. 2012). The party requesting waiver, here Casden, "has the burden to 'objectively demonstrate' the reasons for departing from the usual requirement of a

EXHIBIT 3
23

full supersedeas bond." *Ketab Corp. v. Mesriani L. Grp.*, No. 2:14-cv-07241-RSWL (MRWx), 2016 WL 5921932, at *2 (C.D. Cal. Feb. 1, 2016) (quoting *McClure*, 860 F. Supp. 2d at 1028).

In determining whether to waive or modify the bond requirement, courts in the Ninth Circuit consider the factors set forth in *Dillon v. City of Chicago*, 866 F.2d 902 (7th Cir. 1988). *See, e.g.*, *ConsumerDirect, Inc. v. Pentius, LLC*, No. 8:21-cv-01968-JVS (ADSx), 2024 WL 4329077, at *2 (C.D. Cal. Sept. 20, 2024); *Hoffman v. Markowitz*, No 2:16-cv-01972-SJO (FFMx), 2017 WL 8292769, at *3 (C.D. Cal. Oct. 4, 2017). These factors are:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Dillon*, 866 F.2d at 904–05 (internal quotation marks and citations omitted).

## B.   Discussion—Waive & Stay

Casden devotes less than one page of his motion to the merits. (Mot. Waive & Stay 11.) He briefly addresses only two of the five *Dillon* factors: complexity of the collection process and time required to obtain judgment. (*See id.*; Reply ISO Mot. Waive & Stay ("Reply Waive & Stay") 6–7, ECF No. 239.) Thus, the Court "need not consider" the three unaddressed factors. *Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, No. 2:10-cv-02414-KJM-KJN, 2019 WL 2715616, at *4 (E.D. Cal. June 28, 2019) (quoting *McClure*, 860 F. Supp. 2d at 1028–29).

In any event, the Court is not convinced the unaddressed factors could weigh in Caden's favor. As to factors three and four—confidence in and plainness of ability to pay—Casden is in bankruptcy, which indicates he does not have funds available to pay the judgment or the bond. As to factor five—effect on other creditors—Casden is

EXHIBIT 3

24

already in bankruptcy and the automatic stay applies.  (*See* 11 U.S.C. § 362.)  Without more, the Court cannot conclude that the requirement to post a bond would place Casden's other creditors in an insecure position; Casden's bankruptcy has presumably already done this.  And even if the factors Casden does address—complexity and timeliness—weigh in his favor, he offers no case law showing that these two factors alone would warrant waiving or decreasing a supersedeas bond.  (*See generally* Mot. Waive & Stay; Reply Waive & Stay.)  Regardless, these two factors do not weigh in his favor.

First, the collection process here is complex.  Casden conclusorily asserts that "[t]he collection process will not be complex because [he] is an individual (not a corporate entity) and is domiciled in California and is currently in bankruptcy." (Mot. Waive & Stay 11.)  He does not offer any explanation or case law to support this conclusion.  In fact, Casden's bankruptcy makes the collection process more complex, not less, and will require MET to navigate that process to obtain payment.  Also, Casden's testimony in connection with that bankruptcy reveals that he owns property in trust and has at least one trust that he claims is protected from creditors.  (Decl. Nicole A. Sullivan ISO Opp'n Mot. Waive & Stay, Ex. C ("Rule 2004 Examination Tr.") at 228:8–13, 233:10–17, ECF No. 233-4.)  This supports a finding that the collection process will be complex.

Second, Casden has not met his burden to show that the amount of time required to obtain a judgment after it is affirmed on appeal weighs in his favor.  Once again, Casden's argument is conclusory and devoid of supporting case law.  (*See* Mot. Waive & Stay 11 ("The amount of time required to obtain a judgment after it is affirmed on appeal is short.").)  Courts in this district have found that this factor may weigh against waiver even when a party has already filed a notice of appeal.  *See, e.g.*, *MAG Aerospace Indus., LLC v. Precise Aerospace Mfg., Inc.*, No. 5:18-cv-01096-RGK (JCx), 2019 WL 13020831, at *2 (C.D. Cal. Aug. 26, 2019).  Delay may even

EXHIBIT 3
25

be longer in this case where MET may not be able to collect until after Casden's bankruptcy concludes.

As Casden has not met his burden to show that any of the *Dillon* factors weigh in his favor, the Court finds they do not support waiver or modification of the bond requirement or a stay of execution.

Casden also invokes the factors in *Nken v. Holder*, 556 U.S. 418 (2009), to support waiver and a stay. (Mot. Waive & Stay 11.) To the extent these factors may be applicable, the Court finds that they do not support a stay. Under *Nken*, courts consider four factors in determining whether to grant a stay of enforcement:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 426. "The first two factors . . . are the most critical." *Id.* at 434. And courts only "consider the last two factors if the first two factors are satisfied." *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020). In fact, a court's analysis can conclude if the applicant does not make a strong showing that he is likely to succeed on the merits, "given that if a stay applicant cannot show irreparable harm, a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Id.* at 1061 (internal quotation marks omitted).

Applying *Nken*, Casden asserts that "there is an opportunity" to succeed on the merits and "[m]aintaining the status quo and staying enforcement until resolution of the matters will avoid irreparable harm to [him] and will not substantially injure MET." (Mot. Waive & Stay 11.) However, the question under *Nken* is not whether Casden has "an opportunity" to succeed on the merits, (*id.*), but whether he "has made a strong showing that he is likely to succeed on the merits," *Nken*, 556 U.S. at 426. He has not met this "high burden." *Doe #1*, 957 F.3d at 1070. For the reasons stated elsewhere in this Order, the Court finds Casden could make no such showing.

EXHIBIT 3

26

Additionally, Casden has not provided any evidence or argument to support his conclusory assertion that he would be irreparably harmed absent a stay. After all, he has already filed for bankruptcy. Finally, Casden only conclusorily addresses the third factor and does not address the fourth. (*See generally* Mot. Waive & Stay 11; Reply Waive & Stay.)

As Casden has not demonstrated that any of these factors support a stay, the Court concludes that *Nken* also does not favor waiver or a stay of execution. *See Doe #1*, 957 F.3d at 1070 (rejecting request for stay when none of the *Nken* factors weighed in favor).

## C.    Conclusion—Waive & Stay

For the reasons discussed above, Casden has not met his burden to support a stay of the monetary component of the Judgment, a stay pending resolution of a motion to stay to be filed with the Ninth Circuit, or waiver or reduction of the supersedeas bond. Accordingly, the Court **DENIES** Casden's Motion for Waiver and Stay. (ECF No. 220.)

## VII.    MOTION FOR ATTORNEY'S FEES

The Court turns to the last of the motions addressed in this Order, MET's Motion for Attorneys' Fees. (Mot. Fees.) MET seeks an award of $725,124 for attorneys' fees under the Lanham Act. (*Id.* at 2.) Casden opposes on the basis that MET's motion is untimely. (Opp'n Mot. Fees 5, 7, ECF No. 229.) In the alternative, Casden seeks an across-the-board 53% reduction in the requested attorneys' fees for various alleged deficiencies in MET's motion. (*Id.* at 5, 9–20.)

## A.    Legal Standard—Attorneys' Fees

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Whether a case is "exceptional" is left to the discretion of the district court "considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *SunEarth*, 839 F.3d at 1180–81.

EXHIBIT 3
27

When determining the amount of a fee award under the Lanham Act, "court[s] must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000) (quoting *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir.1993)). Once the lodestar figure is determined, the court then decides whether to adjust the figured based on the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975). *Id.*[3]

## B.    Discussion—Attorneys' Fees

The Court found, "[i]n light of the jury's verdict and the evidence presented at trial," that "Casden's conduct was deliberate and willful, rendering this an exceptional case for which MET is entitled to attorneys' fees." (PTO 13.) As discussed above, the Court rejects Casden's challenges to this finding. *See above* Sections IV.B.2, V.B.1. As such, the issue becomes the amount of a reasonable fee award. In considering MET's motion for attorneys' fees, the Court first addresses Casden's argument that the motion was untimely before turning to the reasonableness of MET's requested fees and Casden's challenges to the requested amount.

### 1.    Timeliness

Casden first asks the Court to deny MET's Motion for Attorneys' Fees on the grounds that it is untimely. (Opp'n Mot. Fees 5, 7.) Rule 54(d)(2)(B) requires a motion for attorneys' fees to "be filed no later than 14 days after the entry of judgment."

---

[3] These factors are

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70.

EXHIBIT 3
28

On September 26, 2023, the Court entered Judgment. (J.) On October 10, 2023, fourteen days later, MET filed its initial motion for attorneys' fees. (First Mot. Att'ys' Fees.) On October 17, 2023, Casden filed for bankruptcy. (Notice Bankruptcy.) In light of the automatic bankruptcy stay, (*see* 11 U.S.C. § 362), the Court stayed the case and denied MET's initial motion for attorneys' fees as moot. (Stay Order.) The Court ordered that MET could renew its motion upon the stay being lifted. (*Id.*) On July 31, 2024, after the bankruptcy court ordered the stay could be lifted for the limited purpose of resolving the parties' post-trial motions, the Court lifted the stay in this case. (Lift Order.) Twelve days later, on August 12, 2024, MET renewed its Motion for Attorneys' Fees. (*See* Mot. Fees.)

Casden argues that MET's Motion for Attorneys' Fees is untimely because MET filed the motion a "combined total" of twenty-six days after entry of judgment—fourteen days before the stay and twelve days after the stay.[4] (Opp'n Mot. Fees 7.) But Casden offers no case law to support his position. MET filed its initial motion for attorneys' fees within fourteen days of the Judgment. In its order staying the case, the Court permitted MET to "renew" its motion. (Stay Order.) Thus, the Court deems MET as having filed its fee motion on October 10, 2023, fourteen days after judgment. Accordingly, MET's fee motion is timely filed.[5]

---

[4] Casden actually asserts that MET filed its fee motion twenty-five days after entry of judgment. But he miscalculates the number of days between entry of judgment and MET's initial motion for attorneys' fees. (*See* Opp'n Mot. Fees (calculating thirteen days between these days); J. (entered September 26, 2023); First Mot. Att'ys' Fees (filed October 10, 2023).) This discrepancy does not alter its analysis, but the Court notes it for the sake of accuracy.

[5] Under Casden's position, MET must have filed its renewed fee motion on *the same day* the Court lifted the stay. This would permit litigants like Casden to strategically and improperly use bankruptcy to make fee motions untimely. This is not in line with the bankruptcy system's goal "to address the collective-action problem that a bankruptcy poses" and "to preserve the debtor's estate so as to ensure fair and equitable recovery for creditors." *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 231 (2024) (Kavanaugh, J., dissenting).

On the topic of timeliness and procedural defects, the Court notes that, while it is not striking his motions on this basis, Casden improperly renewed his motion for judgment as a matter of law and motion to alter or amend judgment, and filed his motion to waive requirement of bond, *after the*

EXHIBIT 3
29

### 2.    Reasonable Fees

The Court next analyzes the reasonableness of MET's requested attorneys' fees. MET requests $725,134 in attorneys' fees for 2,383.4 hours worked.   (*See* Mot. Fees 2, 7.)  Casden filed this action on February 8, 2021.  (Compl., ECF No. 1.)  The four-day jury trial concluded on June 23, 2023.  (PTO 3.)  The requested fee amount includes time associated with, among other things, extensive discovery, motion practice, and trial, as follows:

| Attorney/Biller | Title | Hourly Rate | Total Hours | Lodestar |
|---|---|---|---|---|
| Thomas Butler | Partner | $550 | 144.3 | $77,922 |
| Nicole Sullivan | Partner | $400 | 525.9 | $210,360 |
| Bethany Stevens | Partner | $440 | 221.1 | $97,284 |
| Carol Shahmoon | Counsel | $400 | 65.0 | $26,000 |
| Shruti Panchavati | Associate | $275 | 147.5 | $36,875 |
| Mark Nakahara | Associate | $225 | 753.3 | $169,492.50 |
| Matthew Prutting | Associate | $250 | 277.3 | $69,325 |
| Jake Etienne | Associate | $225 | 15.7 | $4,330.50 |
| Nicole Virella | Associate | $210 | 5.7 | $1,197 |
| Marion Millnamow | Paralegal | $150 | 17.8 | $2,670 |
| Hector Durant | Paralegal | $150 | 50.2 | $7,530 |
| Gabrielle Mavroidis | Paralegal | $150 | 1.4 | $210 |
| April Zappaterrini | Paralegal | $150 | 8.3 | $1,245 |
| Ryan Penny | Tech Support | $85–$180 | 104.8 | $16,859.50 |
| Reth Sorn | Tech Support | $85 | 45.1 | $3,833.50 |
| **TOTAL** | | | **2,383.4** | **$725,134** |

bankruptcy court lifted the automatic stay but *before* this Court lifted the stay in this case.  (*See, e.g.*, Mot. Waive & Stay (filed July 29, 2024); Lift Order (lifting stay on July 31, 2024).)  What is good for the goose is good for the gander; Casden would be wise to ensure his filings are compliant before attacking MET's filings on grounds he fails to meet.

EXHIBIT 3

30

(Mot. Fees 7.)

"[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).  MET meets its burden to produce evidence that the billing rates and hours billed are reasonable. (Decl. Nicole A. Sullivan ISO Mot. Fees ("Sullivan Fees Decl.") ¶¶ 16–17, ECF No. 228-1 (stating that the discounted rates for attorneys, paralegals, and support staff in this case are "modest and well below the market rates in Los Angeles" for "attorneys with similar experience" and "comparable paralegals and staff"); Decl. Bethany Stevens ISO Mot. Fees ("Stevens Fees Decl.") ¶ 9, ECF No. 228-3 (declaring that rates charged are "reasonable" and "at or below market in Los Angeles for attorneys with similar qualifications and experience").)

Casden does not challenge the reasonableness of the hourly rates.  (*See generally* Opp'n Mot. Fees.)  Instead, Casden points to specific billing entries as being unreasonable and seeks a 53% reduction of hours.  (*Id.* at 5, 12-13.)  To the extent Casden argues that a particular attorney's rate is unreasonable for a specific billing entry, (*see id.* at 12–13), the Court addresses those arguments below.  The Court also rules on each of Casden's objections to MET's requested fees—i.e., that they are duplicative, inadequately documented, and excessive.  (*Id.* at 5.)

(a)   Block Billing

Casden seeks a reduction for block billing.  (*Id.* at 9–12.)  He argues that "almost all of MET's recorded hours are billed in block format, thereby making it difficult, if not impossible, to determine how much time was spent on particular activities," and cites four examples of this practice.  (*Id.* at 10–12.)  MET counters that these are not examples of block billing but "detailed descriptions of the work performed on time consuming tasks."  (Reply ISO Mot. Fees ("Reply Fees") 2–3,

EXHIBIT 3
31

ECF No. 242.)   MET also argues, that even if time entries are block billed, the descriptions demonstrate that the time spent was reasonable. (*Id.* at 3.)

Block billing is "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007).   This billing practice "makes it difficult for the court to determine how much time was actually spent on particular work." *SAS v. Sawabeh Info. Servs. Co.*, No. 2:11-cv-04147-MMM (MANx), 2015 WL 12763541, at *33 (C.D. Cal. June 22, 2015).   Thus, the Ninth Circuit has recognized district courts' authority to reduce hours that are block billed if the party seeking fees fails to provide enough information to reveal whether the amount of time spent performing tasks was reasonable. *Welch*, 480 F.3d at 948.

MET is incorrect that only a "small number of entries describ[e] more than one task." (Reply Fees 3.)   MET's billing records reflect extensive block billing.   *All* billing activities are combined in one description per attorney per day whether the attorney did one, two, or ten tasks that day. (*See, e.g.*, Sullivan Fees Decl., Ex. A ("W&W Entries"), ECF No. 282-2; Stevens Fees Decl., Ex. A ("WSC Entries"), ECF No. 282-4.)   Out of the hundreds of billing entries describing multiple tasks, the Court counts only approximately eight in which the description is itemized per task. (*See, e.g.*, W&W Entries 45, 52–53.[6])   Some of MET's entries include lengthy descriptions for one type of task, for example preparing dispositive motions. (Opp'n Mot. Fees 11 (citing W&W Entries 6–7).)   But others include different types of tasks in one entry. (*Id.* at 10 (citing W&W Entries 34) (combined entries related to preparation for multiple depositions).)   This billing practice makes it difficult for the Court to evaluate the reasonableness of some entries.

Accordingly, a reduction is appropriate.   Given the volume of entries, the Court declines to make entry-by-entry reductions.   Therefore, the Court finds a 5% reduction

---

[6] The Court cites the exhibits' internal pagination.

EXHIBIT 3

32

appropriate. *See, e.g., Russell v. Walmart Inc.*, No. 2:19-cv-05495-MWF (JCx), 2024 WL 305388, at *7 (C.D. Cal. Jan. 2, 2024) (imposing a 5% reduction for block billing), *appeal filed*, No. 24-592 (9th Cir. Feb. 19, 2025); *Pierce v. County of Orange*, 905 F. Supp. 2d 1017, 1030 (C.D. Cal. 2012) ("[C]ourts generally impose only a 5% to 20% reduction for those hours block-billed"); *cf. Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (holding that courts "can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation").

(b)   June 2023 Hours

As an example of excessive and duplicative billing, Casden offers MET's "inordinate amount of time billed by 8 different timekeepers for a total of 793.5 hours" in June 2023. (Opp'n Mot. Fees 12.) Casden complains of one attorney billing 73.9 hours, or 18.4 hours a day, during the four-day trial. (*Id.*)

This is not overbilling. It is no secret that trials cost a lot of money. It is also not uncommon for attorneys to work nearly the entirety of waking hours pre-, during, and post-trial. The Court rejects this challenge.

(c)   Motion for Attorneys' Fees

Casden asks for a reduction on MET's time spent on the Motion for Attorneys' Fees, which, he contends, "[g]iven the experience of the attorneys involved . . . should not have required so much time of so many timekeepers doing largely the same thing." (*Id.* at 14.) First, three of MET's attorneys billed 22.5 hours, totaling $5,194.50 for this motion. (Reply Fees 6 (citing W&W Entries 69; WSC Entries 10).) This is not excessive. Second, it is not lost on the Court that Casden challenges MET's motion for attorneys' fees for not "meet[ing] its burden of proof," while in the same breath arguing that they spent too much time preparing their fee motion. (*See* Opp'n Mot. Fees 20.) The Court rejects this challenge.

EXHIBIT 3

33

### (d)     Clerical Work

Casden argues that certain work billed is "the type of clerical work that is considered part of normal overhead and is not recoverable." (*Id.* at 13.)

Purely clerical or secretarial tasks are not compensable. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) ("When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors."). However, it is appropriate to distinguish between non-legal, "purely clerical" work, which is not compensable, and substantive legal work, which may be. *Donastorg v. City of Ontario*, No. 5:18-cv-00992-JGB (SPx), 2021 WL 6103545, at *11 (C.D. Cal. Sept. 23, 2021). For instance, courts consider tasks like copying, scanning, calendaring, filing, and document organization to be clerical in nature and thus not compensable, because they are subsumed within firm overhead. *See Nadarajah*, 569 F.3d at 921; *French v. City of Los Angeles*, No. 5:20-cv-00416-JGB (SPx), 2022 WL 2189649, at *20 (C.D. Cal. May 10, 2022). In contrast, tasks like drafting discovery correspondence, preparing deposition notices, and reviewing and organizing case files are not necessarily purely clerical tasks and may be compensable. *French*, 2022 WL 2189649, at *20.

Casden identifies only five entries as clerical work. Three are from Bethany Stevens, a partner at one of MET's law firms, for "coordinat[ing]" and "oversee[ing]. . . delivery of chambers copies," and "coordinat[ing] with co-counsel, printing vendor." (Opp'n Mot. Fees 12.) This is not clerical work. Even if delivery of chambers copies is clerical work, overseeing or coordinating delivery of copies to chambers is not. Also, the Court disagrees that Stevens's rate is excessive for this type of work.

The two other entries Casden challenges are for work to "[p]rint, tab and ship FedEx hard copy binder" and "[c]onvert several emails to PDF exhibits." (*Id.* at 13.)

EXHIBIT 3

34

1   MET does not address these items, (*see* Reply Fees), so the Court deducts these from

2   the lodestar, a $113.25 reduction.[7]

3           (e)    <u>Inadequate Information</u>

4           Next, Casden seeks a reduction because there is "no information about the

5   identities, background, experience, and positions of seven" timekeepers who

6   performed "mostly . . . unrecoverable overhead type work."  (Opp'n Mot. Fees 13.)

7   Casden cites no authority requiring this information or the "resumes" of such

8   individuals.  (*Id.*)  MET provided these persons' names, titles, hourly rates, hours

9   worked, lodestar amount, and billing entries.  (*See* Mot Fees 7; W&W Entries; WSC

10  Entries; *see also* Decl. Nicole A. Sullivan ISO Reply Fees ¶¶ 5–7, ECF No. 242-2.)

11  That information is sufficient for MET to meet its burden to show that the requested

12  attorneys' fees are reasonable.  Casden does not challenge these individuals' hourly

13  rates and does not describe or explain the work he considers to be "overhead type

14  work." (Opp'n Mot. Fees 13.)  The Court rejects this challenge.

15          (f)    <u>Vagueness</u>

16          Casden argues that "a number of time entries" are "quite vague, inadequately

17  documented, and duplicative." (*Id.*)  He highlights only five such billing entries.  (*Id.*)

18  Even if some of these entries are vague in isolation, when viewed in the context of

19  other entries, they are clearly sufficiently descriptive.  For example, Casden complains

20  that one attorney, Thomas Butler, billed 1.5 hours for "[m]ultiple calls re submission"

21  on June 27, 2023.  (*Id.*)  Two other MET attorneys billed time for "[d]rafting of a joint

22  report" on or around the same date Butler billed this time.  (W&W Entries 63.)  The

23  Court can reasonably conclude that Butler billed for work on the joint report.  The

24  Court also disagrees with Casden that Butler's "time is duplicative of other attorneys."

25

26  ---

    [7] Ryan Penny, at $85 an hour, block billed 0.9 hours for "[c]onverting several emails to PDF exhibits

27  in Breeze," along with one other unchallenged task.  (W&W Entries 25.)  The Court apportions
    0.45 hours to that task, resulting in a $38.25 reduction.  Hector Durant, at $150 an hour, block billed

28  2.9 hours for a host of tasks, including to "[p]rint, tab and ship via FexEx hard copy binder."  (*Id.*
    at 51.)  The Court apportions 0.5 hours to this task, resulting in a reduction of $75.

EXHIBIT 3
35

(Opp'n Mot. Fees 13.)  Multiple lawyers often work on the same tasks, especially submissions to the Court.  It is unsurprising that if Butler had phone calls regarding a submission, there was another MET lawyer on the other end of the call.  The Court, in its discretion, does not find that the identified entries were vague or duplicative.  The Court rejects this challenge.

>    (g)    Pre-Filing Billing

Casden objects to the 29.4 hours billed for fees charged six to eight months before MET filed the instant case.  (*Id.* at 14.)  This time was billed for preparing and drafting the complaint, (W&W Entries 2), or "pre-litigation work that [was] reasonably and necessarily incurred at that time by the prevailing party, *Owaidah v. Mazzei*, No. 5:18-cv-00246-KK, 2020 WL 2405277, at *4 (C.D. Cal. Apr. 9, 2020) (cleaned up).  These fees are permissible.  *See, e.g.*, *Mattel, Inc. v. MGA Ent., Inc.*, 801 F. Supp. 2d 950, 956–57 (C.D. Cal. 2011) (citing *Webb v. Bd. of Educ.*, 471 U.S. 234, 250–51 (1985)) (holding that attorneys' fees are recoverable for time spent preparing "the initial pleadings and the work associated with the development of the theory of the case").  The Court rejects this challenge.

>    (h)    Travel Time

Casden seeks a deduction for travel time billed by MET's lawyers to and from Court.  (Opp'n Mot. Fees 17.)  "Courts in this district have allowed recovery of attorneys' fees related to travel time for hearings and trial . . . ." *Rios v. City of Los Angeles*, No. 2:21-cv-05341-RGK (MAAx), 2023 WL 3432164, at *4 (C.D. Cal. Mar. 2, 2023); *accord Bea-Mone v. Silverstein*, No. 8:17-cv-00550-JLS (DFMx), 2019 WL 762676, at *3 (C.D. Cal. Feb. 20, 2019).  The Court finds MET's travel time reasonable.  MET deducted thirty-nine hours of travel time from its bill for travel to attend pre-trial hearings.  (W&W Entries 51–52.)  MET requests billing for travel for only six one-way trips, to and from the Court for the hearing on motions in limine and trial.  (*Id.* at 60, 62, 64.)  These hearings were necessary for counsel to attend in person, and the Court finds this reasonable.  The Court rejects this challenge.

EXHIBIT 3

36

1          (i)     Non-Lanham Act Claims

2          Casden also seeks a reduction so that he is charged only for work performed in

3   connection with MET's Lanham Act claims, but not for work done on MET's claims

4   for tortious interference and violation of California's unfair competition and false

5   advertising laws.  (Opp'n Mot. Fees 18–19.)

6          Generally, "[i]n an award of 'reasonable attorney fees' pursuant to the Lanham

7   Act, a party cannot recover legal fees incurred in litigating non-Lanham Act claims."

8   *Gracie*, 217 F.3d at 1069.   However, this is not the case where "the Lanham Act

9   claims and non-Lanham Act claims are so intertwined that it is *impossible* to

10  *differentiate* between work done on claims."   *Id.*   Notably, "the impossibility of

11  making an *exact* apportionment does not relieve the district court of its duty to make

12  *some* attempt to adjust the fee award in an effort to reflect an apportionment."  *Id.*

13  at 1070.  "In other words, apportionment or an attempt at apportionment is required

14  unless the court finds the claims are so inextricably intertwined that even an estimated

15  adjustment would be meaningless."  *Id.*

16         MET's unfair competition and false advertising claims are unquestionably

17  intertwined with its Lanham Act claim.  As the Court found in its PTO, "these claims

18  are 'substantially congruent' to claims made under the Lanham Act."   (PTO 13

19  (quoting *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994)).)  Both claims

20  hinge on Casden violating the Lanham Act.  (*Id.*)  The Court explicitly based its ruling

21  that Casden violated California's unfair competition and false advertising laws on the

22  jury's finding that Casden is liable under the Lanham Act.  (*Id.* at 14 ("[B]ecause

23  MET's state law claims for false advertising and unfair competition are substantially

24  congruent to and rest upon the same factual basis as MET's claim for false advertising

25  under the Lanham Act, the Court finds Casden liable for false advertising and unfair

26  competition" under California law).)  Accordingly, MET's Lanham Act and California

27  unfair competition and false advertising claims "have sufficiently identical factual and

28  legal bas[e]s that apportionment is impossible."   *Jackson v. Gaspar*, No. 2:19-cv-

EXHIBIT 3
37

10450-DOC (Ex), 2022 WL 2155975, at *7 (C.D. Cal. Feb. 24, 2022) (unfair competition); *see POM Wonderful, LLC v. Purely Juice, Inc.*, No. 2:07-cv-02633-CAS (JWJx), 2008 WL 4351842, at *3 (C.D. Cal. Sept. 22, 2008), *aff'd*, 362 F. App'x 577 (9th Cir. 2009*)* (false advertising).

Casden argues that MET's tortious interference claim is not sufficiently intertwined with its Lanham Act claim. (Opp'n Mot. Fees 18–19.) At trial, MET presented evidence that Casden intended to and did interfere with the Settlement Agreement in two ways: by voting in favor of Hologenix filing for bankruptcy in bad faith and by making false statements. (PTO 5–7.) Both the Court and the jury found the evidence at trial showed Casden intended to and did induce Hologenix's breach of the Settlement Agreement in both ways. (*Id.*; Verdict 3.)

Casden's false statement in violation of the Lanham Act is the same conduct that caused Hologenix to breach the Settlement Agreement through violating the permanent injunction. Thus, these claims are inextricably intertwined.

However, Casden's voting in favor of Hologenix's bankruptcy petition is not the same conduct as the Lanham Act violation, a proposition which MET does not appear to challenge. (*See* Reply Fees 8–9 (arguing that Casden "ignores that MET's tortious interference claim is predicated on not just Hologenix's bankruptcy filing but also Hologenix's violation of the Permanent Injunction through Casden's false advertising").) Even without a finding of false advertising in violation of the Lanham Act, Casden would have been liable for tortious interference through his voting for Hologenix to file for bankruptcy. Thus, the first set of facts on which the claim rests—false advertising—is "indistinguishable from the Lanham Act claims." *Jackson*, 2022 WL 2155975, at *7. But the second set of facts—Casden's vote for bankruptcy—is "distinguishable because they involve different facts and legal questions." *Id.*

The parties offer no case law for how to address this issue. The Court has identified one case dealing with this specific issue. In that case, the court noted that it

EXHIBIT 3

38

was "unaware of any precedent" on the issue, so "turn[ed] to equitable principles to make its decision." *Id.* Because "[f]ee awards are an equitable power" courts exercise, *id.*, the Court does the same here.

The most equitable result would be to award attorneys' fees for work done on the tortious interference related to the Lanham Act claim but withhold attorneys' fees for work related to the bankruptcy vote. As Casden correctly points out, work concerning the *Noerr-Pennington* doctrine related solely to the bankruptcy basis. (*See* Opp'n Mot. Fees 19.) But this apportionment exercise is not always so easy. For example, the Court cannot breakdown work related to "tortious interference claims." (*E.g.*, W&W Entries 6, 62.) Given this, and considering the lengthy billing records submitted, the Court will not reduce the fees line-by-line. However, that does not mean that these claims are so "inextricably intertwined that even an estimated adjustment would be meaningless." *Gracie*, 217 F.3d at 1070.

The Court finds it most equitable to apportion attorneys' fees as follows: the Court divides the requested attorneys' fees by <u>four</u> on account of each of MET's asserted claims. The Court then divides the tortious interference by <u>two</u> to account for the two theories of liability. This results in a 12.5% apportionment of the fees to account for the tortious interference based on the bankruptcy. *Id.* ("[T]he impossibility of making an *exact* apportionment does not relieve the district court of its duty to make *some* attempt to adjust the fee award in an effort to reflect an apportionment."); *Monster Energy Co. v. Vital Pharms., Inc.*, No. 5:18-cv-01882-JGB (SHKx), 2023 WL 9419597, at *9 (C.D. Cal. Dec. 14, 2023) ("[T]he Court must make some attempt to adjust the fee award to reflect, even if imprecisely, work performed on these non-Lanham Act claims." (cleaned up).) Accordingly, the Court reduces MET's attorneys' fees by another 12.5%.

(j)    <u>Remaining Challenges</u>

Casden asks for additional deductions based on redacted time entries. (Opp'n Mot. Fees 17–18.) MET does not seek attorneys' fees for work described in the

EXHIBIT 3

39

redacted entries.  (Sullivan Fees Decl. ¶ 20; *see also* Reply Fees 8.)  No reductions are warranted on this basis.

Casden also claims that MET should not be permitted to recover for work done on four ex parte applications and three motions that the Court rejected.  (Opp'n Mot. Fees 14–16.)  He also challenges MET's requested fees because "a substantial portion of work in this lawsuit" was a duplication of work MET had done in other lawsuits.  (*Id.* at 16.)  Casden cites no case law to support these reductions, and the Court finds that MET has met its burden to show these fees were reasonably expended in this case.  The Court rejects Casden's request for a reduction on these bases.

To the extent any of Casden's challenges are not explicitly addressed in this Order, the Court has thoroughly considered and rejected them.

## C.    Conclusion—Attorneys' Fees

In conclusion, the Court finds MET is entitled to attorneys' fees and that its rates billed are reasonable.  Based on the *Kerr* factors and applicable law, the Court first reduces the $725,134 lodestar by $113.25 for billed clerical work, and then by 17.5%, for block billing and the bankruptcy-voting basis of the tortious interference claim (5% and 12.5%, respectively).  Accordingly, Casden is obligated to pay MET attorneys' fees in the amount of $598,142.12.

EXHIBIT 3

40

# VIII.    CONCLUSION

For the reasons discussed above, the Court **DENIES** Casden's Motion for JMOL or alternatively a New Trial, and **DENIES** Casden's Motion to Alter or Amend the Judgment.  (ECF Nos. 218, 219.)  The Court **DENIES** Casden's Motion to Waive Bond and Stay Enforcement.  (ECF No. 220.)  Finally, the Court **GRANTS IN PART** MET's Motion for Attorneys' Fees and awards **$598,142.12.**  (ECF No. 228.)

**IT IS SO ORDERED.**

February 21, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

EXHIBIT 3
41

## **PROOF OF SERVICE**

**Multiple Energy Technologies, LLC v. Seth Casden**
**Case No. 2:21-cv-01149**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 1840 Century Park East, Suite 500, Los Angeles, CA 90067-2120.

On March 3, 2025, I served true copies of the following document(s) described as **AMENDED NOTICE OF APPEAL** on the interested parties in this action as follows:

### **SEE ATTACHED SERVICE LIST**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 3, 2025, at Los Angeles, California.

/s/ Teresa Tayag
Teresa Tayag

---

*PROOF OF SERVICE - AMENDED NOTICE OF APPEAL*

1

**SERVICE LIST**
*Multiple Energy Technologies, LLC v. Seth Casden*
Case No. 2:21-cv-01149

2

3

WHITE AND WILLIAMS LLP
Thomas E. Butler (pro hac vice)
butlert@whiteandwilliams.com
Nicole Sullivan (pro hac vice)
sullivann@whiteandwilliams.com
7 Times Square, Suite 2900
New York, NY 10036-6524
Telephone: (212) 714-3070
Facsimile: (212) 244-6200

Attorneys for Plaintiff
Multiple Energy Technologies LLC

4

5

6

7

8

9

WALKER STEVENS CANNOM LLP
Bethany Stevens
bstevens@wscllp.com
Hannah Cannom
hcannom@wscllp.com
500 Molino Street #118
Los Angeles, CA 90013
Telephone: (213) 712-9145
Facsimile: (213) 403-4906

Attorneys for Plaintiff
Multiple Energy Technologies LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2