**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MULTIPLE ENERGY TECHNOLOGIES, LLC, <br><br> *Plaintiff - Appellee*, <br><br> v. <br><br> SETH CASDEN, <br><br> *Defendant - Appellant*. | No. 24-4691 <br><br> D.C. No. 2:21-cv-01149-ODW-RAO <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, II, District Judge, Presiding

Argued and Submitted April 15, 2026
Pasadena, California

Filed July 30, 2026

Before: Consuelo M. Callahan, Patrick J. Bumatay, and
Eric C. Tung, Circuit Judges.

Opinion by Judge Tung

# SUMMARY[*]

## California Tort Law/Lanham Act

The panel affirmed in part and reversed in part the district court's judgment after a jury trial in favor of Multiple Energy Technologies, LLC ("MET") in its action under the Lanham Act and California state law against Seth Casden, CEO of Hologenix.

MET sued Hologenix, maker of a competing bioceramic material, claiming that Hologenix falsely advertised its product Celliant as having been approved by the FDA. The two companies settled the case, but before Hologenix made all its payments due under the settlement agreement, it filed for bankruptcy. MET then sued Casden, alleging that, in violation of the settlement agreement, Hologenix continued to represent that the FDA determined that Celliant has health benefits. The district court granted judgment as a matter of law in favor of MET on its claim that Casden tortiously interfered with Hologenix's performance of the settlement agreement, and it awarded MET $2.5 million in damages on that claim. The jury returned a verdict in favor of MET on its false advertising claim under the Lanham Act and awarded nominal damages of one dollar. On MET's motion, however, the district court awarded MET disgorgement of Casden's salary earned from 2020 through 2023, trebled that amount, and awarded MET attorneys' fees.

Reversing the district court's judgment on the tortious interference claim, the panel held that, under California law,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

when an officer of a corporation is found to have induced the corporation to breach a contract, he normally cannot be sued for tortious interference of contract because an agent acting on behalf of a principal is immune from such a suit. The panel held that the district court erred in concluding that because Casden acted for his "individual advantage" when he induced a breach, he did not act as an agent and was not entitled to immunity from the tortious-interference claim. The panel held that it is only when an agent acts outside the scope of his agency, such as by acting for his own benefit *at the expense of his principal*, that the law steps in to deny immunity. Because the district court failed to apply that rule, the panel reversed the district court's denial of immunity and remanded for further proceedings.

Reversing the district court's award of damages on the false advertising claim under the Lanham Act, which provides for the equitable remedy of an award of the defendant's profits, the panel held that Casden's salary was not his profits. The panel therefore reversed the district court's disgorgement award.

The panel affirmed the district court's award of attorneys' fees under the Lanham Act, 15 U.S.C. § 1117(a), which provides for an award of attorneys' fees to the prevailing party in an exceptional case. The district court did not abuse its discretion in considering the jury's finding that Casden's representations concerning Celliant were "deliberately or intentionally false" in its decision to award attorneys' fees.

## COUNSEL

Nicole Sullivan (argued) and Thomas Butler, White & Williams LLP, New York, New York; Bethany Stevens, Walker Stevens Cannom LLP, Los Angeles, California; for Plaintiff-Appellee.

Kian Tamaddoni (argued), Kelly R. Horwitz, and Gerald M. Serlin, Benedon & Serlin LLP, Woodland Hills, California, for Defendant-Appellant.

## OPINION

TUNG, Circuit Judge:

This case asks whether an officer of a corporation can be sued for tortious interference of contract when he is found to have induced the corporation to breach a contract. Normally, the answer is no—an agent acting on behalf of a principal is immune from such a suit; otherwise, a plaintiff can effectively seek double-recovery, first from the principal (for breach of contract) and then from the agent (for tortious interference) for the same underlying conduct (the breach). But if the supposed agent acts *not* for and on behalf of his principal, but acts to benefit himself at the expense of his principal, then the agent loses his immunity. He stands as "a stranger" to the contract and can be sued for tortious interference.

The district court misapplied these principles here. It concluded that, because the corporate officer acted for his "individual advantage" when he induced a breach (*e.g.*, he promoted sales of his company's product to boost his individual bonus), the officer did not act as an agent and was

not entitled to immunity from a tortious-interference claim. 1-ER-52–54.  That conclusion is wrong.

Agency status is not defeated simply because an employee advances his own interests while also seeking to advance the company's interests (and here, there is no finding that the officer acted against the company).  Nothing in the law of agency demands something so unrealistic as requiring an agent to harbor purely selfless motives; our corporate law does not reflect a puritanical creed that seeks to extirpate self-interest.  The wrong is not that an agent may act to benefit himself—after all, who doesn't, to some degree, act with such a motive?  It is only when an agent acts outside the scope of his agency, such as by acting for his own benefit *at the expense of his principal*, that the law steps in to deny immunity.

Because the district court failed to apply that rule, we reverse the district court's denial of immunity and remand for further proceedings.  The district court also awarded disgorgement and attorney's fees for a separate claim brought by the plaintiff under the Lanham Act.  1-ER-55–57.  For the reasons stated below, we reverse the damages award, but affirm the award of attorney's fees.

## I.

Plaintiff Multiple Energy Technologies ("MET") competes with another company, Hologenix, in the athletic-wear market.  3-ER-494–96.  They both make a bioceramic material designed to be embedded inside textiles and reflect a person's heat back to his body in the form of infrared energy.  3-ER-367.  This reflective feature is supposed to enhance the wearer's circulation, support muscle recovery, and provide other health benefits.  *Id*.; 4-ER-805–06.  MET calls its product Redwave.  1-ER-47;  3-ER-366.

Hologenix's competing product is called Celliant.  1-ER-47; 3-ER-367.  Defendant Seth Casden is the CEO of Hologenix. 3-ER-367.    He is also its co-founder and majority shareholder.  *Id*.; 5-ER-909.

In 2019, MET sued Hologenix.  MET claimed that Hologenix falsely advertised its product (Celliant) as having been approved by the FDA.  7-ER-1259–60.  The two companies then settled the case.  7-ER-1214–19.  Hologenix agreed to pay MET a settlement amount of $2.5 million (in installments) and to refrain from representing that Celliant was FDA-approved or that the FDA determined that Celliant has health benefits.  *Id*.  Before Hologenix made all its payments, it filed for bankruptcy.  3-ER-367; 1-ER-48.

MET then sued Hologenix's CEO (Casden).  According to MET, Hologenix continued to represent that the FDA determined that Celliant has health benefits— representations that Casden approved or made himself—in violation of the settlement agreement.  *See, e.g*., 3-ER-498– 502, 508–09.  In this lawsuit (the subject of our appeal), MET claimed that Casden both tortiously interfered with Hologenix's performance of the settlement agreement and violated the federal Lanham Act, which prohibits false advertising.  1-ER-51; 3-ER-524, 526.  MET also claimed that Casden tortiously interfered with Hologenix's obligations to pay MET under the settlement agreement when Casden (as a corporate officer) voted to put Hologenix into bankruptcy.  1-ER-51; 3-ER-526.

The case went to a jury.  After the jury trial, MET moved for judgment as a matter of law, asking the district court to conclude that Casden engaged in tortious interference. *Multiple Energy Technologies v. Casden*, Case No. 2:21-cv-01149-ODW-RAO, Dkt. No. 179 (C.D. Cal., Jun. 22, 2023).

The district court granted the motion. *Id*.; 1-ER-52. The district court acknowledged that an agent is ordinarily immune from a tortious-interference claim when the agent is "acting for and on behalf of the corporation." 1-ER-52. But the district court reasoned that, because Casden "acted for his individual advantage," he could not claim immunity. 1-ER-54. As an example of Casden acting in his own interest, the district court stated that "Casden was eligible for a bonus of up to fifty percent of his base salary per year based on Hologenix's business performance" and "[t]hus, by falsely promoting Celliant, Casden positioned himself to gain personally." 1-ER-53. The district court also pointed to the jury's "advisory finding" that "Casden acted to advance his own personal interests at the time he interfered with the Settlement Agreement." 1-ER-54. The jury had made an advisory finding, too, that at the time Casden interfered with the contract, he was "acting in his official capacity on behalf of Hologenix." 2-ER-267. But the district court did not note this. It awarded MET $2.5 million in damages for the tortious-interference claim. 1-ER-55.

The jury returned a verdict in MET's favor on its false-advertising claim under the Lanham Act and awarded nominal damages of one dollar. *Id*.; 2-ER-265. On MET's motion, however, the district court awarded MET disgorgement of Casden's salary earned from 2020 through 2023 (a total of $983,171) pursuant to its reading of 15 U.S.C. § 1117(a), which entitles plaintiff to recover a "defendant's profits." 1-ER-55–56. The district court then trebled that amount pursuant to its interpretation of the statute and also awarded attorney's fees of nearly $600,000 under the Act. 1-ER-10; 1-ER-41. Between the tortious-interference award, the Lanham Act award, and attorney's fees, the district court awarded over $6 million.

Casden appealed.  He brings three challenges.  *First*, Casden challenges the district court's judgment as a matter of law concluding that he was not entitled to immunity as an agent of Hologenix from MET's tortious-interference claim. *Second*, Casden challenges the district court's award under the Lanham Act of a disgorgement of profits in the amount of his salary (trebled), although he does not contest the jury's finding that he violated the Lanham Act.  And *third*, he challenges the district court's award of attorney's fees under the Lanham Act.  Below, we address each of these three issues.  We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  We review an order granting judgment as a matter of law *de novo*, *Spencer v. Peters*, 857 F.3d 789, 797 (9th Cir. 2017), and we review a decision to award disgorgement of profits (trebled) and attorney's fees under the Lanham Act for an abuse of discretion, *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1076–77 (9th Cir. 2015), *partially overruled on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (per curiam) (en banc); *SunEarth*, 839 F.3d at 1181.

## II.

### A.

Whether an agent is entitled to immunity for a tortious-interference claim is a matter of state law.  *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011) ("When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims.").  California law governs here.  *Los Angeles Airways, Inc. v. Davis*, 687 F.2d 321, 324 n.3 (9th Cir. 1982); *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009)

(applying California choice-of-law rules to determine applicable state law).  And under that law, "ordinarily corporate agents and employees acting for and on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract since being in a confidential relationship to the corporation their action in this respect is privileged." *DeHorney v. Bank of America Nat. Trust and Sav. Ass'n*, 879 F.2d 459, 464 (9th Cir. 1989) (citation omitted); *see also Shoemaker v. Myers*, 52 Cal. 3d 1, 24 (1990) ("[C]orporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract."); *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 576 (1973) (same); *Doctors' Co. v. Superior Court*, 49 Cal. 3d 39, 45 (1989) (same).

This "agent's immunity rule" comes from another settled rule: "there can be no action for inducement of breach of contract against the other party to the contract." *Shoemaker*, 52 Cal. 3d at 24; *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 512 n.4, 514 (1994).[1]  Just as an "action for inducing a breach of contract will not lie against the party to the contract," *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 999 (1977), this action also should not lie against the agent who is acting for and on behalf of the party to the contract.  The "grievance" the action seeks to address would be, "in essence, breach of contract"; therefore, to allow an action in tort against the party (or his agent) would "not only be superfluous" but would also allow "tort

---

[1] We use the term "agent's immunity rule," as that is the term used by the California Supreme Court.  *See, e.g.*, *Applied Equipment Corp.*, 7 Cal. 4th at 512 n.4.  California Courts of Appeal also refer to this immunity as the "agent's privilege" or "manager's privilege."  *See, e.g.*, *Huynh v. Vu*, 111 Cal. App. 4th 1183, 1194 n.11 (2003).

damages" (such as punitive and mental-suffering damages) for a contract claim. *Id.* California law does not permit that.

But an agent's immunity vanishes if he does *not* act for and on behalf of his principal when inducing the breach. In that instance, the purported agent stands as a "stranger[]" to the contract and could be subject to a tortious-interference claim. *See Applied Equipment Corp.*, 7 Cal. 4th at 514. When does an agent fail to act "for and on behalf" of his principal? When he acts outside the scope of his agency such as by acting for himself *at the expense of his principal*. That occurs when, for example, the supposed agent usurps corporate opportunities meant for the principal or engages in other forms of self-dealing to the detriment of the principal. *See, e.g.*, *Olivet v. Frischling*, 104 Cal. App. 3d 831, 836, 841 (1980) ("Obviously, when a manager induces a breach in the hopes that he himself might fill the resultant economic void, he acts not as a servant, i.e., as one upholding his master's best interests, but rather as a naked competitor, devoid of the protections accorded those who labor under standards of fidelity, good faith[,] and fiduciary responsibility."), *disapproved of on other grounds by Applied Equipment Corp.*, 7 Cal. 4th at 510. An agent's immunity should not be denied merely because the agent acts to benefit himself (while also seeking to advance the principal's interest). *See Los Angeles Airways*, 687 F.2d at 328. Otherwise, agents who act in their self-interest—to get a raise, to make more money, to sustain a family—would *lose* immunity even though their actions would generally also advance their employer's interests.[2] Nothing in California law (or common sense) requires that outcome.

---

[2] *See, e.g.*, *Mintz v. Blue Cross of California*, 172 Cal. App. 4th 1594, 1606 (2009) ("Every agent, in one way or another, acts for its own

Yet that is what the district court concluded. The district court held that merely because Casden acted for "individual advantage," he lost his status as an agent and could not claim to be immune from a tortious-interference claim. 1-ER-54. But there was no finding that Casden, in purporting to act for his own benefit, took actions at the expense of his principal. The district court cited certain facts—Casden wanting to earn a larger bonus by enhancing "Hologenix's business performance"; Casden entering into an employment contract; Casden preparing Hologenix for bankruptcy—to support its conclusion that Casden "acted to advance his own personal interests" when he induced the breach. 1-ER-53–54. But all those actions appear compatible with Hologenix's interests. At least there has been no finding that Casden acted against those interests.

The district court appeared to have adopted its "individual advantage" formulation from *Wise v. S. Pac. Co.*, 223 Cal. App. 2d 50, 72 (1963) *disapproved of on other grounds by Applied Equipment Corp.*, 7 Cal. 4th at 510, but this is a misreading of *Wise*. 1-ER-52. *Wise* stated that "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." 223 Cal. App. 2d at 72. To start, this statement addresses conspiracy, not

---

financial advantage when it acts for its principal, because the agent is compensated by its principal, and conduct in furtherance of the principal's interest will necessarily serve the agent's interests as well. A 'financial advantage' exception to the sound rule that the contracting party's agent, like the contracting party, cannot be liable for interference with the contract, would entirely swallow up the rule."); *Restatement (Third) of Agency* § 8.01 (2006) ("clarify[ing] that an agent's loyal service to the principal may, concurrently, be beneficial to the agent.").

tortious interference with contractual relations. But more importantly, *Wise* did not hold that a person, in order to retain immunity as an agent, cannot act for his "individual advantage" while also advancing his principal's interests. Indeed, *Wise* says that if a person is acting in his official capacity on behalf of the corporation, he retains an agent's immunity. *Id.* Here the jury made an advisory finding that Casden acted in that capacity (2-ER-267), and there was no contrary finding that he acted as a mere "individual" (non-agent) acting for his "individual advantage" at the expense of his principal. The district court also appeared to hinge its denial of immunity on Casden's purportedly selfish motives. But under California law, subjective motives are not the lodestar in determining whether an agent acts for and on behalf of the company. "Where an employee acts within the scope of his employment, it does not matter whether his conduct in inducing the breach of contract was motivated by 'ill-will or malice on his part.'" *DeHorney*, 879 F.2d at 464 (quoting *Imperial Ice Co. v. Rossier*, 18 Cal. 2d 33, 38 (1941)); *J.F. Parkinson Co. v. Building Trades Council of Santa Clara County*, 154 Cal. 581, 594 (1908) ("[A] bad motive does not convert an act otherwise lawful into a ground of action[.]"); *Boyson v. Thorn*, 98 Cal. 578, 583 (1893) ("[A]n act which does not amount to a legal injury cannot be actionable because it is done with a bad intent[.]"); Thomas M. Cooley, Treatise of the Law of Torts, or the Wrongs Which Arise Independent of Contract 832 (2d ed. 1888) ("Bad motive, by itself, then, is no tort. Malicious motives make a bad act worse, but they cannot make that a wrong which in its own essence is lawful."); *cf. J.D. Edwards & Co. v. Podany*, 168 F.3d 1020, 1024–25 (7th Cir. 1999) ("[W]e do not make the mistake of confusing bad faith with greed. A consultant might be in consulting purely for

the money, but as long as he made his money by offering honest advice within the scope of his employment, his private motives would be irrelevant.").[3]

It is thus the *act* (not the motive) that counts.  To determine whether agency immunity attaches, we apply an objective test: is the agent *acting* for and on behalf of the company, or outside the scope of his agency such as by acting for himself at the expense of the company?  The district court failed to apply the proper test here.

---

[3] The California Supreme Court in *Imperial Ice* noted that certain "statements" in *Boyson* "to the effect that no interference with contractual relations is actionable if the means employed are otherwise lawful were not necessary to the decision and should be disregarded." 18 Cal.2d at 38.  But *Imperial Ice* did not abrogate the proposition in *Boyson* (and subsequently affirmed in *J.F. Parkinson*) that a bad motive in this context does not convert an otherwise lawful act into an unlawful one.  Indeed, *Imperial Ice* itself affirmed that proposition, citing *Boyson* and *J.F. Parkinson*.  *Id.*  All *Imperial Ice* meant by its commentary on *Boyson* was that the tort of interference with contractual relations does not require a *separate* wrongful act beyond the interference itself (in contrast to the tort of interference with prospective economic relations, which does require such a separate wrongful act); the inducement of a contractual breach need only be done "*unjustifiably*" for the tort to lie. *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 387 (1995) (emphasis in original).  Nor is *Collins v. Vickter Manor, Inc.*, 47 Cal. 2d 875 (1957), to the contrary.  There, the California Supreme Court stated that "[w]hether or not [the corporate defendants] were privileged to cause the corporation to discontinue its relations with plaintiffs, in the belief that such a course of action was in the best interests of the corporation, is a matter of defense, to be decided by a resolution of the factual issues presumptively involved." *Id.* at 883.  The California Supreme Court did not embrace a motives-only test, which would have been contrary to *Boyson*, *J.F. Parkinson*, and *Imperial Ice*; it merely concluded that the asserted privilege in that case could not sustain a demurrer.

The pitfalls of a test that turns only on subjective motives are apparent. *First*, as tort law has long recognized, it would be odd if an otherwise permissible act by an agent becomes impermissible merely because the agent had a motive to benefit himself. The California Supreme Court approvingly quoted Lord Coledrige as stating: "I do not know [except in one case] that it has ever been held that the same person for doing the same thing under the same circumstances, with the same result, is actionable or not actionable according to whether his inward motive was selfish or unselfish for what he did." *Boyson*, 98 Cal. at 583 (quoting *Bowen v. Hall*, (1881) 6 Q.B.D. 333, 344 (Lord Coleridge, C.J., dissenting)); *see also* Cooley, Treatise of the Law of Torts at 830 ("Any transaction which would be lawful and proper, if the parties were friends, cannot be made the foundation of an action merely because they happened to be enemies.") (citations omitted).

*Second*, a motives-only test would be both under- and over-inclusive. It would be under-inclusive, because if an agent harbors a "good" motive while acting against the principal's interest (*e.g.*, justifying the use of the company's funds without the company's knowledge, and against the company's directives, to promote a business opportunity that he believes would nevertheless benefit the company), a motives-only test would preserve immunity when the agent should lose it. A motives-only test would also be over-inclusive, because if the agent acts in the principal's interest but with a "bad" motive (*e.g.*, voting in favor of a bankruptcy filing, out of an ulterior motive to protect his own secured claim, even though bankruptcy is in the company's best interest), the agent would lose immunity when he should keep it.

*Third*, there are administrability problems with a motives-only test.  Motives are notoriously difficult to discern; nor is it clear what a judge or jury should be looking for—that the agent acted with the intent to benefit the principal rather than himself?  What if the agent harbored "mixed" motives—do we look to whether the agent was motivated *in part* to benefit the principal, or whether he was motivated *predominantly* to benefit the principal?[4]  (Again, it should not matter if an agent has a private motive mostly to benefit himself so long as he acts loyally and in the company's interests.)   One quickly runs into these conceptual difficulties with a motives-only test.  *See Boyson*, 98 Cal. at 583–84 ("[T]he inquiries to which this view of the law would lead are dangerous and inexpedient inquiries for courts of justice; judges are not very fit for them, and juries

---

[4] *Compare Los Angeles Airways*, 687 F.2d at 328 ("We conclude that where, as here, an advisor is motivated in part by a desire to benefit his principal, his conduct in inducing a breach of contract should be privileged"), *with Huynh*, 111 Cal. App. 4th at 1198 ("In our view, when a manager stood to reap a tangible personal benefit from the principal's breach of contract, so that it is at least reasonably possible that the manager acted out of self-interest rather than in the interest of the principal, the manager should not enjoy the protection of the manager's privilege unless the trier of fact concludes that the manager's *predominant* motive was to benefit the principal."); *see also* Restatement (Third) of Torts: Liab. For Econ. Harm §17(o).  Because neither *Los Angeles Airways* nor *Huynh* addressed whether an agent's immunity should turn on whether an agent's action was taken at the principal's expense (apart from his subjective motives), we are not precluded from addressing that issue (and answering yes).  *See United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) ("Prior precedent that does not squarely address a particular issue does not bind later panels on the question.") (internal quotation marks and citation omitted).

are very unfit[.]" (quoting *Bowen*, Law R. 6 Q.B.D. at 344)).[5]

To be sure, some language in our caselaw and in intermediate state authorities (*supra* at n.4) suggests that a court should look to motive in assessing whether agency immunity attaches.  But again, even if one could surmount the problems of administrability that a motives-only test would produce, such a test in this context misconceives the objective nature of the inquiry and is contrary to *DeHorney* and California Supreme Court precedent directing us to examine the act rather than the motive.  *See supra* at 9–14; *see also Della Penna*, 11 Cal. 4th at 403 (Mosk, J.,

---

[5] In addition, "[t]he scope of the manager's [or agent's] privilege as developed under California's common law since *Olivet v. Frischling* was decided, is neither clear nor consistent," with the "question of whether the privilege is absolute [not reliant on an agent's motive] or qualified [reliant on an agent's motive] is somewhat muddled in California law, resulting in a knot of authority on the issue." *Huynh*, 111 Cal. App. 4th at 1195 (internal quotations omitted); *see also* 3 Cal. Affirmative Def. § 41:19 & nn.10, 12 (2d ed. 2025) ("[W]hen applicable, the manager's privilege is generally held to be an absolute, not qualified, privilege. . . . Nevertheless, there are decisions holding that the manager must act on behalf of the principal, 'with impersonal or disinterested motive,' not on behalf of the manager's own personal interests[.]") (citing divergent California Court of Appeal cases).  Further, the most recent reported decisions of the California Courts of Appeal do not look to motive at all. *See Mintz*, 172 Cal. App. 4th at 1606 ("The only question is whether the representative of a contracting party may be held liable for the substantive tort of interfering with the contract.  The cases answer that question in the negative."); *Asahi Kasei Pharm Corp. v. Actelion Ltd.*, 222 Cal. App. 4th 945, 967 (2013) ("[U]nder the manager's privilege, a company's manager may not be liable to a third party for inducing *his or her* company to breach *its* contract with the third party.").  Given divergence among the California Courts of Appeal, we rely on the California Supreme Court's past opinions (*see supra* 9–14) to predict how that court will rule.

concurring in the judgment) (discussing the related tort of interfering with prospective economic advantage and stating that "the focus on the interfering party's motive is simply inappropriate [because] for present purposes, motive is altogether immaterial").  We conclude that, for purposes of assessing agency immunity, evidence of motive is relevant only to the extent "it indicates whether or not [the principal's] interest is actually being protected" (*cf. Imperial Ice*, 18 Cal. 2d at 36)—*i.e.*, whether the agent acted for and on behalf of his principal, or instead, outside the scope of his agency such as by acting for himself at the expense of his principal.  In short, evidence of a self-serving motive may indicate that the agent is acting for himself to the detriment of his principal.

A few remaining points.  It cannot be that merely inducing the breach is enough to defeat an agent's immunity; that rule would eviscerate agency immunity altogether and disregard the reality that efficient breaches can advance a principal's interests.  *See* Harvey S. Perlman, *Interference with Contract and Other Economic Expectancies: A Clash of Tort and Contract Doctrine*, 49 U. CHI. L. REV. 61, 79–80 (1982).  Nor can a post hoc conclusion that the agent caused his principal to break the law result in the loss of immunity on the theory that it is never in the principal's interest to break the law.  Immunity is an inquiry at the threshold; it should not turn on an after-the-fact determination of legality.

Here, the district court held that Casden acted for himself, and it erroneously denied immunity on that basis.  It did not conclude that Casden failed to act for and on behalf of his principal—indeed, one of the jury's advisory findings was that Casden "act[ed] in his official capacity on behalf of Hologenix." 2-ER-267.  No findings were made that Casden acted at the expense of his principal to benefit himself or that

he otherwise acted outside the scope of his agency.  Absent such findings, the district court erred in denying immunity.[6]

## B.

Now onto Lanham Act relief.  Casden appeals the district court's grant of disgorgement of his salary for violating the Lanham Act.   Under the Act, "the plaintiff shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."   15 U.S.C. § 1117(a).   The district court issued an award that was purportedly based on the "defendant's profits."  The district court treated Casden's salary (as the CEO of Hologenix) as a proxy for Casden's "profits."  1-ER-56.

That was error.  Casden's salary is not his profits.  Under the statute, to assess "profits," the plaintiff "shall be required to prove defendant's sales only" and the "defendant must prove all elements of cost or deduction claimed."  15 U.S.C. § 1117(a).  But MET failed to show that Casden had any sales.   To be sure, Hologenix made sales.   But the "defendant" here is not Hologenix.   The defendant is Casden.  *See Dewberry Group, Inc. v. Dewberry Engineers, Inc.*, 604 U.S. 321, 323 (2025) ("Under the pertinent statutory provision, the court could award only profits properly ascribable to the defendant itself.").   And so it is

---

[6] Casden had also argued to the district court that his vote to file for bankruptcy was protected petitioning activity under the *Noerr-Pennington* doctrine, and that he was therefore protected under the First Amendment from liability for MET's tortious-interference claim.  We need not address this defense, as we hold that the district court applied the incorrect standard for agent's immunity and remand with further instructions to the district court to evaluate MET's tortious interference claim in light of the appropriate standard.

*Casden's* sales that must be shown.  Without that first step, the district court could not award Casden's "profits."  Nor could the district court substitute "profits" with "salary" in this case; the two are distinct—salary is a business cost to Hologenix and compensation to Casden, and profits are what remain after expenses have been deducted.  *See Profit*, Black's Law Dictionary (3d ed. 1933) ("The advance in the price of goods sold beyond the cost of purchase [or t]he gain made by the sale of produce or manufactures, *after deducting the value of the labor*, materials, rents, and all expenses, together with the Interest of the capital employed." (emphasis added)).    Conflation of the two here was improper.

Because we conclude that the district court erred in treating Casden's salary as his profits, we reverse the district court's disgorgement award (and do not reach the propriety of trebling that award).

## C.

Finally, attorney's fees.    The district court "in exceptional cases may award reasonable attorney fees to the prevailing party" under the Lanham Act.    15 U.S.C. § 1117(a).    Because MET prevailed on its Lanham Act claims—an outcome that Casden does not contest—MET may be awarded attorney's fees if the district court finds this case to be "exceptional." *Id*.  A case may be "considered exceptional 'when the infringement is malicious, fraudulent, deliberate, or willful." *Fifty-Six Hope Rd. Music*, 778 F.3d at 1077.  The jury here found that Casden's representations concerning Celliant were "deliberately or intentionally false" in violation of the Lanham Act.    2-ER-264.    The

20 MULTIPLE ENERGY TECHNOLOGIES, LLC v. CASDEN

district court thus did not abuse its discretion when it considered this finding to award attorney's fees.[7]

\* \* \*

Selfishness may be a moral failing but by itself is no grounds for a tort here. For the reasons stated above, the district court erred when it deprived Casden of an agent's immunity merely because he acted for his "individual advantage." An agent loses his immunity when he acts at the expense of his principal. He does not lose immunity when he acts in his principal's interests, though he may harbor a motive for personal gain. We reverse the district court's judgment denying immunity and remand for further proceedings consistent with this opinion. We reverse the district court's award of disgorgement, but affirm its award of attorney's fees, under the Lanham Act.

**REVERSED AND REMANDED IN PART. AFFIRMED IN PART.**

---

[7] While we affirm the award of attorney's fees under the Lanham Act, the district court remains free, if asked, to adjust the amount in light of our opinion.